## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FINANCIALRIGHT CLAIMS GMBH,  )
      )
      Plaintiff,  )
      )  C.A. No. 24-929-CFC
      v.  )
      )
BURFORD GERMAN FUNDING  )
LLC,  )
      )
      Defendant.  )

## OPENING BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION TO COMPEL ARBITRATION AND
## TO STAY FURTHER PROCEEDINGS PENDING ARBITRATION

OF COUNSEL:

Derek T. Ho
Minsuk Han
Travis G. Edwards
Eliana Margo Pfeffer
Dustin G. Graber
KELLOGG, HANSEN, TODD,
    FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com
mhan@kellogghansen.com
tedwards@kellogghansen.com
epfeffer@kellogghansen.com
dgraber@kellogghansen.com

Dated: December 20, 2024

YOUNG CONAWAY STARGATT
  & TAYLOR, LLP

Elena C. Norman (No. 4780)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
enorman@ycst.com
agaza@ycst.com
swilson@ycst.com

*Counsel for Burford German Funding LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... ii

STATEMENT OF THE NATURE AND  STAGE OF THE PROCEEDINGS ....... 1

SUMMARY OF ARGUMENT ................................................................ 3

STATEMENT OF FACTS ...................................................................... 4

LEGAL STANDARD ........................................................................... 6

ARGUMENT ..................................................................................... 8

I.    The FAA Requires Arbitration Of FRC's Claim ............................ 8

    A.    FRC Clearly And Unmistakably Agreed To Arbitrate The Validity Of The Arbitration Agreement ................................. 9

    B.    The Agreement To Arbitrate The Validity Of The Arbitration Agreement Is Enforceable ................................. 12

II.    This Action Must Be Stayed Pending Arbitration ........................ 16

CONCLUSION ................................................................................. 17

i

# TABLE OF AUTHORITIES

Page

**Cases**

*Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013)...................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................................................15

*Blackhawk Network, Inc. v. IdX Corp.*, 2023 WL 3848337
(D. Del. June 6, 2023)............................................................................................10

*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) .......................................................8, 9

*Deardorff v. Cellular Sales of Knoxville, Inc.*, 2022 WL 407396
(E.D. Pa. Feb. 9, 2022) ..........................................................................................12

*Eisenbach v. Ernst & Young U.S. LLP*, 2018 WL 5016993
(E.D. Pa. Oct. 16, 2018)................................................................................... 12, 13

*Elko Broadband Ltd. v. Dhabi Holdings PJSC*, 2020 WL 6435754
(D. Nev. Nov. 2, 2020) ...........................................................................................11

*Estanislao Enters. Inc. v. FedEx Ground Corp.*, 2024 WL 3315526
(W.D. Pa. July 5, 2024) .......................................................................................8, 13

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)...............................10

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008)...................................7

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019)...................12

*Huertas v. Foulke Mgmt. Corp.*, 2017 WL 6447868
(D.N.J. Dec. 18, 2017) ...........................................................................................13

*Jones v. Waffle House, Inc.*, 866 F.3d 1257 (11th Cir. 2017) ................................11

*Lloyd v. HOVENSA, LLC*, 369 F.3d 263 (3d Cir. 2004)..........................................16

*MacDonald v. CashCall, Inc.*, 883 F.3d 220 (3d Cir. 2018) ........................ 7, 8, 13

*Mack v. Progressive Corp.*, 2024 WL 1120377
(E.D. Pa. Mar. 14, 2024)................................................................................. 10, 11

*Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449 (4th Cir. 2017) ................................................13

*MZM Constr. Co. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386 (3d Cir. 2020) ................................................................................8

*Payne v. Samsung Elecs. Am., Inc.*, 2024 WL 726907 (Del. Super. Ct. Feb. 21, 2024) ........................................................................2

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010) .......................... 7, 8, 9, 11, 12

*Rosser v. Crothall Healthcare, Inc.*, 2024 WL 3792222 (E.D. Pa. Aug. 13, 2024) ..............................................................................13

*Scott v. CVS*, 2023 WL 3477827 (3d Cir. May 15, 2023) ......................................15

*Smith v. Spizzirri*, 601 U.S. 472 (2024) .............................................................7, 16

*SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033 (N.D. Cal. 2018) ........................................................................................11

*Yellow Soc. Interactive Ltd. v. Ebersole*, 697 F. Supp. 3d 219 (D. Del. 2023) ........................................................................................9, 10

*Zirpoli v. Midland Funding, LLC*, 48 F.4th 136 (3d Cir. 2022) ...........................15

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*:

9 U.S.C. § 2 ..........................................................................................................6, 7

9 U.S.C. § 3 ........................................................................................................7, 16

9 U.S.C. § 4 ........................................................................................................7, 16

9 U.S.C. § 203 ..........................................................................................................2

9 U.S.C. § 205 ..........................................................................................................2

9 U.S.C. § 206 ..........................................................................................................6

9 U.S.C. § 208 ..........................................................................................................6

28 U.S.C. § 1782 ............................................................................................. 1, 2, 6

**Rules**

Del. Super. Ct. Civ. R. 12(b)(1)...................................................................................2

The declaratory judgment lawsuit filed by financialright claims GmbH ("FRC") against Burford German Funding LLC ("BGF") in state court—now removed to this Court—should be in arbitration.  FRC agreed clearly and unmistakably, in not one but two contractual provisions, to submit to arbitration any dispute about the validity of its arbitration agreement with BGF.  The Federal Arbitration Act ("FAA") and governing Supreme Court and Third Circuit precedent require enforcement of those "delegation clauses" and a stay of any further court proceedings in this action.

## STATEMENT OF THE NATURE AND
## STAGE OF THE PROCEEDINGS

BGF set forth the relevant background to the parties' dispute in its motion to compel arbitration in the § 1782 proceeding.  *See In re Application of financialright claims GmbH*, C.A. No. 23-1481-CFC (D. Del.) ("§ 1782 Action"), D.I. 21.  To avoid duplication, BGF highlights only the most relevant background here.

FRC filed its § 1782 application on December 29, 2023, seeking discovery from BGF and its managers and members.  *See* § 1782 Action, D.I. 2.  BGF and those members moved to compel arbitration pursuant to the arbitration agreement in the Capital Provision Agreement ("CPA") between FRC and BGF.  *See* § 1782 Action, D.I. 20.  In opposing BGF's motion, FRC asserted for the first time that the parties' arbitration agreement was invalid because "FRC was fraudulently induced

to enter into the CPA's arbitration clause." § 1782 Action, D.I. 36 at p. 19 of 28. On the same day it filed its opposition, FRC filed an action in Delaware Superior Court seeking a declaration that the parties' "Arbitration Agreement is invalid and unenforceable." D.I. 1-1, Ex. A ¶ 37.

On July 23, 2024, BGF moved to dismiss in state court on the basis of the parties' arbitration agreement.[1] *See* D.I. 1-1, Exs. P-U. On August 9, 2024, BGF removed the state court case to this Court pursuant to 9 U.S.C. §§ 203, 205. *See* D.I. 1. FRC opposed BGF's motion to dismiss on September 11, 2024, *see* D.I. 12, and BGF replied on September 18, 2024, *see* D.I. 14.

The Court held a hearing on December 10, 2024. For the reasons discussed on the record during that argument, the Court determined that it would deny BGF's motion to dismiss without prejudice to BGF's ability to file a motion to compel arbitration. *See* Dec. 11, 2024 Oral Order. The Court also permitted FRC to make a limited amendment to its complaint. *See* Dec. 12, 2024 Oral Order (entering D.I. 30). FRC filed an amended complaint on December 11, 2024 (hereafter, "Complaint"), substantively changing only a single sentence in paragraph 40. *See* D.I. 29. Pursuant to the Court's December 11, 2024 and December 12, 2024

---

[1] Because only the Delaware Court of Chancery can compel arbitration, a motion to compel arbitration in the Delaware Superior Court is properly brought under Delaware Superior Court Civil Rule 12(b)(1). *See Payne v. Samsung Elecs. Am., Inc.*, 2024 WL 726907, at *1 (Del. Super. Ct. Feb. 21, 2024).

orders, BGF now moves to compel arbitration in this Court and stay this action pending that arbitration.

## SUMMARY OF ARGUMENT

1.      The parties have clearly and unmistakably agreed to arbitrate any threshold disputes over arbitrability—including any dispute over the validity of the arbitration agreement.  That delegation is contained in two mutually reinforcing provisions.  First, the CPA incorporates by reference the London Court of International Arbitration ("LCIA") arbitral rules that authorize the arbitral tribunal to resolve "any objection to the . . . validity . . . of the Arbitration Agreement." Courts have repeatedly held that similar provisions constitute a binding delegation clause.  Second, section 27(a) of the CPA states that the parties shall arbitrate "[a]ny dispute, controversy or claim arising out of or in connection with" the CPA, including "any question regarding its formation, existence, [and] validity."

Under the FAA, those two delegation clauses must be enforced unless FRC specifically challenges their validity; a challenge to the validity of the arbitration agreement as a whole is insufficient.  FRC's allegations that the parties' arbitration agreement was fraudulently induced do not specifically challenge the enforceability of the CPA's delegation clauses.  To the contrary, FRC's Complaint makes clear that its challenge to the validity of the arbitration agreement as a whole is not based on the delegation clauses between FRC and BGF.  And FRC's

eleventh-hour amendment to a single paragraph in its Complaint does not—and cannot—change that fact. As a result, the delegation clauses must be enforced and FRC must arbitrate its claim that the arbitration agreement is invalid.

2.    Section 3 of the FAA requires that this Court stay this action until the resolution of the arbitration pending before the LCIA.

## STATEMENT OF FACTS

In July 2016, the European Commission determined that a cartel of truck manufacturers had engaged in price-fixing. BGF, an entity established to fund German antitrust litigation, engaged FRC as a claims administrator to aggregate claims of truck owners harmed by this anticompetitive conduct. Unlike in the United States, German law does not provide for class actions, so mass litigation is conducted by a claims administrator that receives assignments of claims from multiple assignors and litigates them on behalf of the assignors.[2]

BGF's engagement of FRC is memorialized in the CPA dated April 25, 2017. *See* D.I. 1-1, Ex. A ¶ 1. Pursuant to that agreement, BGF would fund the litigation on behalf of the truck owners (the "Trucks Litigation"). D.I. 1-1, Ex. A ¶¶ 2-3. Because BGF would put tens of millions of euros at risk, BGF would receive the vast majority of the success fee, with FRC earning payments along the

---

[2] *See generally* Int'l Compar. Legal Guides, *Class and Group Actions Laws and Regulations – Germany 2024* (ICLG July 11, 2023), https://iclg.com/practice-areas/class-and-group-actions-laws-and-regulations/germany.

way on a fee-for-service basis as well as a very small percent of the total recovery at the end, as compensation for its tasks.  FRC retained Hausfeld Rechtsanwälte LLP ("Hausfeld Germany") as counsel in the Trucks Litigation.  D.I. 1-1, Ex. A ¶ 5.

The CPA required that the parties keep the terms of their agreement strictly confidential.  Further, the parties agreed to arbitrate "[a]ny dispute, controversy or claim arising out of or in connection with [the CPA]."  Section 27 of the CPA states as follows:

> (a) Any dispute, controversy or claim arising out of or in connection with this Agreement, including any question regarding its formation, existence, validity, interpretation, performance, breach or termination and any application for interim, preliminary, equitable or injunctive relief, shall (to the exclusion of any other forum) be referred to and finally resolved by arbitration under the Arbitration Rules of The London Court of International Arbitration (the "*LCIA*"), which rules are deemed to be incorporated by reference into this Section.  Any attempt by [FRC] to seek relief or remedies in any other forum shall constitute a breach of this Agreement and entitle [BGF] to damages, equitable relief and full indemnification against all costs and expenses incurred in connection therewith.  [FRC] shall be obliged to post security for costs as directed by the arbitral tribunal ("*Tribunal*").

> (b) The Tribunal shall consist of three arbitrators.  Each party shall nominate one arbitrator and the two arbitrators nominated by the parties shall, within thirty days of the nomination of the second party-nominated arbitrator, agree upon and nominate a third arbitrator who shall act as Chairman of the Tribunal.  If no agreement is reached within thirty days or at all, the LCIA Court shall select and appoint a third arbitrator to act as Chairman of the Tribunal.  (The foregoing shall not be interpreted as an opt-out of the Emergency Arbitrator rules set forth in Article 9B of the LCIA Rules.)

(c) The seat, or legal place, of arbitration shall be London.  Proceedings shall occur at locations agreed by the parties or directed by the Tribunal.

(d) The language to be used in the arbitral proceedings shall be English.

CPA § 27(a)-(d).

On December 29, 2023, FRC terminated Hausfeld Germany as its counsel and sued it in German court.  *See* D.I. 1-1, Ex. A ¶ 6, Ex. U at 5.  On the same day, FRC filed an application under 28 U.S.C. § 1782 seeking discovery from BGF and its members for use in the German proceeding.  *See* D.I. 1-1, Ex. A ¶ 6.  BGF and other respondents moved to stay that action and compel arbitration.  *See* § 1782 Action, D.I. 20, 21, 38.  In opposing the motion to compel, FRC argued for the first time that the parties' arbitration agreement was fraudulently induced.  The same day, FRC filed the declaratory judgment action in Delaware Superior Court.  *See* D.I. 1-1, Ex. A ¶¶ 33-41.  These proceedings ensued.

## LEGAL STANDARD

It is undisputed that the arbitration agreement in this case is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, and therefore Chapter 2 of the FAA.  Section 206 of the FAA provides that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."  9 U.S.C. § 206.  Under section 208, Chapter 1 of the FAA also applies to the extent it is not in

conflict with Chapter 2.  *Id.* § 208.

Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract . . . shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" may petition the Court "for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  Section 3 of the FAA states that the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  Section 3 is mandatory and requires courts to stay litigation pending arbitration.  *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

The FAA "reflects the 'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'"  *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018) (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008)) (cleaned up).  Courts "must rigorously enforce arbitration agreements according to their terms, including terms that 'specify with whom the parties choose to arbitrate their disputes,' and 'the rules under which that arbitration will be conducted.'"  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (cleaned up).

7

A "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70; *see also MZM Constr. Co. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 398 (3d Cir. 2020) ("[P]arties may contractually bestow upon arbitrators the power to decide their own jurisdiction."). Thus, a party contesting the enforceability of a delegation clause must "challenge[] the delegation provision specifically." *Rent-A-Ctr.*, 561 U.S. at 72. "Without a specific challenge to a delegation provision, the court must treat that provision as valid and enforce it according to FAA § 4." *MacDonald*, 883 F.3d at 227. In making such a challenge in a complaint, moreover, a party must "ple[a]d sufficient facts to set forth a *plausible claim* challenging the delegation clause specifically." *Estanislao Enters. Inc. v. FedEx Ground Corp.*, 2024 WL 3315526, at *8 (W.D. Pa. July 5, 2024) (emphasis added).

## ARGUMENT

### I.    The FAA Requires Arbitration Of FRC's Claim

Both the FAA and binding precedent require the arbitration of FRC's claim for a declaratory judgment that the CPA is invalid and unenforceable. By agreeing

to a delegation clause, FRC agreed to submit to the LCIA arbitral tribunal all "second-order dispute[s]" about arbitrability. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024) (explaining the different orders of disputes). FRC's claim that the parties' arbitration agreement is invalid plainly falls within the scope of that delegation clause. And that delegation clause is enforceable by its terms unless FRC specifically challenges the validity of the delegation clause itself. Because FRC's Complaint does not do so—and it has no basis for doing so—this Court must enforce the delegation clause and compel arbitration of FRC's claim.

### A.    FRC Clearly And Unmistakably Agreed To Arbitrate The Validity Of The Arbitration Agreement

The Supreme Court, the Third Circuit, and this Court have recognized that contracting parties can grant arbitrators the "exclusive authority" to decide gateway questions of arbitrability through a so-called "delegation provision." *Rent-A-Ctr.*, 561 U.S. at 68-69, 71; *Yellow Soc. Interactive Ltd. v. Ebersole*, 697 F. Supp. 3d 219, 222 (D. Del. 2023) (Connolly, J.) ("Parties may agree to have an arbitrator decide 'gateway' questions of arbitrability."). "[A]s a matter of substantive federal arbitration law," the delegation clause is an "additional, antecedent agreement" that is severable from the arbitration agreement, regardless of how the parties chose to embody that antecedent agreement in the contract. *Rent-A-Ctr.*, 561 U.S. at 70-72 (brackets in original); *id.* at 72 (severability rule "does not depend on the substance of the remainder of the contract"). The parties'

9

agreement must only be "clear and unmistakable" in manifesting their intent to delegate arbitrability to the arbitrator. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (cleaned up).

Here, the CPA's delegation clause is "clear and unmistakable" twice over. *First*, section 27(a) of the CPA "incorporate[s] by reference" the Arbitration Rules of the LCIA, which at Article 23.1 state that "[t]he Arbitral Tribunal shall have the power to rule upon its own jurisdiction and authority, including *any objection to the initial or continuing existence, validity, effectiveness or scope of the Arbitration Agreement*." LCIA Rules art. 23.1 (2020) (emphasis added), https://perma.cc/ W7QU-4TDS. FRC's claim that the arbitration agreement is invalid falls within the scope of that delegation clause.

As this Court has recognized, "by providing in the [agreement] that any arbitration would be conducted pursuant to [specified arbitration rules], which empower arbitrators to determine their own jurisdiction," the parties "provided clear and unmistakable evidence of their agreement that gateway disputes over arbitrability would be resolved by the arbitrator." *Blackhawk Network, Inc. v. IdX Corp.*, 2023 WL 3848337, at *3 (D. Del. June 6, 2023) (Connolly, J.) (AAA rules); *see Yellow Soc. Interactive*, 697 F. Supp. 3d at 222 (AAA rules); *see also Mack v. Progressive Corp.*, 2024 WL 1120377, at *4 (E.D. Pa. Mar. 14, 2024) (AAA rules). Other courts have specifically held that incorporation of the LCIA Rules

10

constitutes a clear and unmistakable delegation of questions of arbitrability to the arbitrator.  *See*, *e.g.*, *SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1043 (N.D. Cal. 2018); *Elko Broadband Ltd. v. Dhabi Holdings PJSC*, 2020 WL 6435754, at *4 (D. Nev. Nov. 2, 2020).

 *Second*, section 27(a) of the CPA provides that "[*a*]*ny dispute, controversy or claim* arising out of or in connection with this Agreement, *including any question regarding its formation, existence, validity, interpretation, performance, breach or termination*" is subject to arbitration "to the exclusion of any other forum."  CPA § 27(a) (emphases added).  Courts have held repeatedly that the plain meaning of the term "[a]ny dispute" is "all disputes," including gateway issues of arbitrability.  *See*, *e.g.*, *Rent-A-Ctr.*, 561 U.S. at 66 (finding delegation where clause provided that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable") (brackets in original); *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267-68 (11th Cir. 2017) (finding similar language to constitute delegation of gateway issues because "[a]ny disputes means all disputes, because 'any' means all") (brackets in original); *Mack*, 2024 WL 1120377, at *4 (similar).  That clause

11

thus also manifests FRC's intention to arbitrate any dispute as to the validity of the arbitration agreement.

**B.    The Agreement To Arbitrate The Validity Of The Arbitration Agreement Is Enforceable**

"When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 71 (2019).  The only role for the Court, in that instance, is to resolve any claim that the delegation clause itself is invalid on the basis of a contractual defense such as fraud, duress, or unconscionability.  *See Rent-A-Ctr.*, 561 U.S. at 68.

FRC does not specifically challenge the validity of the parties' agreement to delegate arbitrability disputes to arbitration; that ends the inquiry.  As courts within the Third Circuit have found, a challenge to a delegation clause must specifically target the part of the arbitration agreement that delegates questions of arbitrability to the arbitrator.  *See Deardorff v. Cellular Sales of Knoxville, Inc.*, 2022 WL 407396, at *7 (E.D. Pa. Feb. 9, 2022) (collecting cases where delegation was specifically challenged).

For example, in *Eisenbach v. Ernst & Young U.S. LLP*, 2018 WL 5016993, at *3 (E.D. Pa. Oct. 16, 2018), the court determined that a party challenged a delegation clause when the plaintiff argued that the clause improperly "submits critical issues of contract interpretation and arbitrator jurisdiction to this inherently

12

biased forum" and alleged that delegating questions of arbitrability "is grossly unfair" and "substantively unconscionable." *Id.*

Courts have also found that plaintiffs "specifically challenged the delegation clause" when a complaint specifically alleged that "any provision requiring that the enforceability of the arbitration procedure must be decided through arbitration is . . . illusory and unenforceable," *see MacDonald*, 883 F.3d at 227, or that the delegation clause specifically "is a procedurally unconscionable contract of adhesion." *Rosser v. Crothall Healthcare, Inc.*, 2024 WL 3792222, at *5 (E.D. Pa. Aug. 13, 2024); *see also Huertas v. Foulke Mgmt. Corp.*, 2017 WL 6447868, at *5 (D.N.J. Dec. 18, 2017) (determining that a "Virginia law 'renders void delegation provisions in putative insurance contracts'" sufficiently challenged a delegation clause) (citing *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 456-57 (4th Cir. 2017)).

Because FRC's Complaint never even mentions the delegation clause in words or substance, the Court's sole role is to enforce that agreement by its terms. *See Estanislao Enters.*, 2024 WL 3315526, at *9 ("The Court's review of the pleading clearly indicates that at no point does [plaintiff] directly challenge the delegation clause. . . . [Plaintiff] has therefore failed to meet its burden to plead a plausible claim challenging the delegation clause, as is required under Third Circuit precedent.").

13

Moreover, FRC's Complaint makes clear that any such challenge would be implausible. FRC's Complaint specifically admits that FRC "understood at the time it signed the CPA that the Arbitration Agreement would require FRC to arbitrate any claims against BGF, its counterparty"; it complains only that it "did not understand that the Arbitration Agreement would require FRC to arbitrate any other claims against any other parties, and certainly not any claims against GLS or Hausfeld." D.I. 29 ¶ 4. As evidence, FRC points to the forum-selection clause with Hausfeld Germany, and notes that "FRC thus reasonably expected that disputes with Hausfeld would be resolved through litigation in German courts." D.I. 29 ¶ 5. It is only because of BGF's alleged "fraud on FRC" that "FRC did agree to the Arbitration Agreement that—according to BGF—subsumes disputes between FRC and GLS." D.I. 29 ¶ 9; *see also* D.I. 29 ¶ 25. None of these allegations have any bearing on whether FRC would have agreed to delegate threshold questions of arbitrability. Indeed, those allegations acknowledge a valid arbitration agreement between FRC and BGF, which is sufficient to enforce the delegation clauses as they relate to FRC's lawsuit here, which is only against BGF.

FRC's eleventh-hour amendment does not help it. FRC claims that it "would not have agreed to the Arbitration Agreement, *including, to the extent it can be read to have severable subparts, any subpart thereof*, had it known of GLS's involvement in BGF." D.I. 29 ¶ 40 (emphasis added). To begin with, this

14

allegation is conclusory, and thus not entitled to be credited as true under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). As explained above, the non-conclusory allegations in the Complaint acknowledge that FRC fully understood it was arbitrating all disputes—including disputes about the validity of the arbitration agreement itself—with BGF. Whether it knew it was arbitrating against GLS is immaterial in this case, since GLS is not a party.

Moreover, FRC's amendment cannot override *Rent-A-Center*. Under *Rent-A-Center*, the delegation clauses in the CPA constitute completely separate agreements; the whole point of the severability doctrine is that they cannot be treated merely as a "subpart" of the parties' arbitration agreement. Thus, adding the words "including . . . subparts" cannot cure the fundamental defect of FRC's Complaint under *Rent-A-Center*—namely, the absence of a plausible challenge to the delegation clause specifically. *See Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 144-45 (3d Cir. 2022) (finding that challenge "to the arbitration agreement does not go to the enforceability of the *delegation clause*, because of the severability doctrine"); *Scott v. CVS*, 2023 WL 3477827, at *2 (3d Cir. May 15, 2023) (per curiam) ("We are required to enforce arbitration agreements 'according to their terms' and, in the absence of some other generally applicable contract defense directed to the *delegation* provision, such as fraud, duress, or unconscionability, let an arbitrator determine arbitrability.") (emphasis added).

Because FRC has not mounted such a challenge, the FAA requires that this Court "direct[] . . . arbitration [to] proceed in the manner provided for in" the parties' agreement.  9 U.S.C. § 4.

## II.   This Action Must Be Stayed Pending Arbitration

BGF has a pending LCIA arbitration against FRC seeking relief for several of FRC's breaches of the parties' agreement.  FRC's claim in this action belongs to that tribunal.  Section 3 of the FAA states that the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  As the Third Circuit has explained, and the Supreme Court recently confirmed, "the statute clearly states, without exception, that whenever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until arbitration has been concluded."  *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) (quoting 9 U.S.C. § 3); *see Smith*, 601 U.S. at 478 ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").  Accordingly, BGF requests that the Court stay this action pending the resolution of the LCIA arbitration.

## CONCLUSION

BGF respectfully requests that the Court compel arbitration of FRC's

declaratory judgment lawsuit and stay this action pending that arbitration.

Dated:  December 20, 2024

OF COUNSEL:

Derek T. Ho
Minsuk Han
Travis G. Edwards
Eliana Margo Pfeffer
Dustin G. Graber
KELLOGG, HANSEN, TODD,
    FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com
mhan@kellogghansen.com
tedwards@kellogghansen.com
epfeffer@kellogghansen.com
dgraber@kellogghansen.com

YOUNG CONAWAY STARGATT
    & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Elena C. Norman (No. 4780)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
enorman@ycst.com
agaza@ycst.com
swilson@ycst.com

*Counsel for Burford German Funding LLC*

17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINANCIALRIGHT CLAIMS GMBH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 24-929-CFC |
| v. | ) | |
| | ) | |
| BURFORD GERMAN FUNDING LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATION OF COMPLIANCE
WITH TYPE, FONT, AND WORD LIMITATIONS**

This brief complies with the Court's Standing Order Regarding Briefing in All Cases. It has been prepared in Times New Roman 14-point type, and contains 3,899 words, exclusive of case caption, tables, and signature block, which were counted by Microsoft Word.

Dated: December 20, 2024

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Anne Shea Gaza*
Elena C. Norman (No. 4780)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
enorman@ycst.com

agaza@ycst.com
swilson@ycst.com

*Counsel for Burford German Funding LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 20, 2024, I caused copies of the foregoing

documents to be served upon the counsel listed below in the manner indicated:

**BY EMAIL:**

Matthew E. Fischer
Jacqueline A. Rogers
Charles R. Hallinan
POTTER ANDERSON &
CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899
mfischer@potteranderson.com
jrogers@potteranderson.com
challinan@pottteranderson.com

Jeffrey A. Rosenthal
Lina Bensman
Patrick Swiber
Nicholas Maisel
Maria E. Manghi
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, NY 10006
jrosenthal@cgsh.com
lbensman@cgsh.com
pswiber@cgsh.com
nmaisel@cgsh.com
mmanghi@cgsh.com

*Counsel for Plaintiff*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Anne Shea Gaza*
Elena C. Norman (No. 4780)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
enorman@ycst.com
agaza@ycst.com
swilson@ycst.com

*Counsel for Burford German Funding LLC*