# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

FINANCIALRIGHT CLAIMS GMBH,

Plaintiff,

v.

BURFORD GERMAN FUNDING LLC,
Defendant.

C.A. No. 24-929-CFC

## FRC'S OPPOSITION TO BURFORD'S
## MOTION TO COMPEL ARBITRATION

OF COUNSEL:

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
Jeffrey A. Rosenthal (*pro hac vice*)
Lina Bensman (*pro hac vice*)
Patrick C. Swiber (*pro hac vice*)
One Liberty Plaza
New York, NY 10006
(212) 225-2000
jrosenthal@cgsh.com
lbensman@cgsh.com
pswiber@cgsh.com

*Counsel for financialright claims GmbH*

Dated:  January 3, 2025

POTTER ANDERSON &
CORROON LLP
Matthew E. Fischer (#3092)
Bindu A. Palapura (#5370)
Jacqueline A. Rogers (#5793)
Charles R. Hallinan (#6814)
1313 N. Market Street, 6th Floor
Wilmington, DE 19801-6108
(302) 984-6000
mfischer@potteranderson.com
bpalapura@potteranderson.com
jrogers@potteranderson.com
challinan@potteranderson.com

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................ ii

STATEMENT OF THE NATURE AND STAGE OF THE
PROCEEDINGS .................................................................... 1

ARGUMENT ............................................................................ 4

    I.    The Court Must Adjudicate FRC's Fraudulent
        Inducement Claim. .................................................... 6

        A.    FRC Challenges the Delegation Agreement .................... 7

        B.    The Delegation Agreement Is Not Severable ................. 14

    II.    The Action Should not be Stayed ................................. 20

CONCLUSION ......................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Rapid Dx N. Am., LLC v. eMed, LLC*,
    2022 WL 18027570 (N.D. Ill. Dec. 30, 2022)............................................ 18

*Am. Baptist Churches of Metropolitan N.Y. v. Galloway*,
    271 A.D.2d 92 (1st Dep't 2000) ................................................................ 19

*Andre v. Dollar Tree Stores, Inc.*,
    2018 WL 3323825 (D. Del. July 6, 2018) ................................................ 10

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009).............................................................................. 3, 20

*Blackhawk Network, Inc. v. IdX Corp.*,
    2023 WL 3848337 (D. Del. June 6, 2023) ................................................ 19

*Coinbase, Inc. v. Suski*,
    602 U.S. 143 (2024)................................................................................... 18

*Corchado v. Foulke Mgmt. Corp.*,
    2017 WL 1734804 .................................................................................... 17

*Corchado v. Foulke Mgmt. Corp.*,
    707 F. App'x 761 (3d Cir. 2017) .......................................................... 3, 17

*Eisenbach v. Ernst & Young U.S. LLP*,
    2018 WL 5016993 (E.D. Pa. Oct. 16, 2018) ............................................ 19

*Estanislao Enters. Inc. v. FedEx Ground Corp.*,
    2024 WL 3315526 (W.D. Pa. July 5, 2024) ............................................. 8

*Gibbs v. Haynes Invs., LLC*,
    967 F.3d 332 (4th Cir. 2020) ...................................................................... 9

**Page(s)**

*Gibbs v. Sequoia Cap. Operations, LLC,*
    966 F.3d 286 (3d Cir. 2020) ...................................................... 9–10

*Gingras v. Think Fin., Inc.,*
    922 F.3d 112 (2d Cir. 2019) ...................................................... 18

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
    561 U.S. 287 (2010).................................................................... 5

*Guidotti v. Legal Helpers Debt Resol., L.L.C.,*
    716 F.3d 764 (3d Cir. 2013) ...................................................... 7, 8–9

*Huertas v. Foulke Mgmt. Corp.,*
    2017 WL 6447868 (D.N.J. Dec. 18, 2017)................................. 19

*Jones v. Waffle House, Inc.,*
    866 F.3d 1257 (11th Cir. 2017) ................................................. 19

*Klotz v. Celentano Stadtmauer & Walentowicz LLP,*
    991 F.3d 458 (3d Cir. 2021) ...................................................... 7

*MacDonald v. CashCall, Inc.,*
    883 F.3d 220 (3d Cir. 2018) .............................................. *passim*

*Mack v. Progressive Corp.,*
    2024 WL 1120377 (E.D. Pa. Mar. 14, 2024) ........................... 19

*MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds,*
    974 F.3d 386 (3d Cir. 2020) ...................................................... 19

*Quilloin v. Tenet HealthSystem Phila., Inc.,*
    673 F.3d 221 (3d Cir. 2012) ...................................................... 16

*Rent-A-Center, W., Inc. v. Jackson,*
    561 U.S. 63 (2010)..................................................................... 9, 15

*Robbins v. Playhouse Lounge,*
    2021 WL 2525709 (D.N.J. June 21, 2021)................................ 10

**Page(s)**

*Rosser v. Crothall Healthcare, Inc.*,
    2024 WL 3792222 (E.D. Pa. Aug. 13, 2024) ............................................ 19

*Scott v. CVS*,
    2023 WL 3477827 (3d Cir. May 15, 2023)............................................... 19

*Simar Holding Corp. v. GSC*,
    87 A.D.3d 688 (2d Dep't 2011)................................................................. 18

*Singh v. Uber Techs. Inc.*,
    939 F.3d 210 (3d Cir. 2019) ....................................................................... 9

*SteppeChange LLC v. VEON Ltd.*,
    354 F. Supp. 3d 1033 (N.D. Cal. 2018)..................................................... 19

*Swiger v. Rosette*,
    989 F.3d 501 (6th Cir. 2021) ...................................................................... 9

*Williams v. Medley Opportunity Fund II, LP*,
    965 F.3d 229 (3d Cir. 2020) ................................................................ 13–14

*Yellow Soc. Interactive Ltd. v. Ebersole*,
    697 F. Supp. 3d 219 (D. Del. 2023)........................................................... 19

*Zirpoli v. Midland Funding, LLC*,
    48 F.4th 136 (3d Cir. 2022) ...................................................................... 19

**Rules and Statutes**

D. Del. R. 7.1.3(c)(2) ...................................................................................... 9

**Other Authorities**

Williston on Contracts (4th ed.)................................................................. 18, 19

This action seeks a declaratory judgment that a one-sentence contractual clause requiring the arbitration of all disputes arising under a Capital Provision Agreement ("CPA") between financialright claims GmbH ("FRC") and Burford German Funding ("Burford" or "BGF") was the product of fraud.  Because FRC's fraud allegation challenges the parties' agreement to arbitrate "any dispute" related to the CPA, including as to its validity, scope, and enforceability, Supreme Court and Third Circuit precedent require that this Court deny Burford's present motion to compel arbitration (D.I. 33, "Motion" or "Mot").

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

The background to this dispute is summarized in detail in FRC's previous briefing relating to its § 1782 application.  *See In re Application of financialright claims GmbH,* C.A. No. 23-1481-CFC (D. Del), D.I. 4.  In relevant part, on December 29, 2023, FRC filed an application under 28 U.S.C. § 1782 (the "Application") for discovery in aid of a lawsuit it filed in Germany against its former counsel, Hausfeld, for breach of fiduciary duty, including because Hausfeld had arranged for a de-facto contingency fee by secretly investing in Burford.[1] Through the Application, FRC sought leave to serve subpoenas on Burford, Burford's parent, and Hausfeld's investment vehicle, GLS.  Burford moved to

---

[1]    Capitalized terms not defined herein shall have the meaning ascribed to them in FRC's Opposition to Burford's Motion to Dismiss, D.I. 12.

compel arbitration of the Application, arguing that Section 27(a) of the CPA required FRC to arbitrate its discovery requests as to all three respondents, including GLS.

FRC opposed the motion on several grounds, including that Burford's failure to disclose Hausfeld's investment in Burford was a fraudulent omission which induced FRC's agreement to Section 27(a) of the CPA. In particular, FRC alleged that if Burford had disclosed Hausfeld's investment, FRC would not have agreed to Section 27(a) of the CPA. Those allegations are the subject of this action.

## SUMMARY OF ARGUMENT

1. FRC alleges that if Burford had disclosed the existence of its financial relationship with Hausfeld, FRC would not have agreed to Section 27(a) of the CPA. Among other reasons that FRC will prove at trial, (a) the right to litigate any and all disputes with Hausfeld and its affiliates was important to FRC, and (b) FRC would have been unwilling to relinquish full access to the judicial system had it known that Burford was in bed with the lawyers that Burford insisted FRC hire. Compl. ¶¶ 8–9, 21, 24–25, 31–32, 39–40. Because FRC explicitly challenges the first sentence of Section 27(a) of the CPA—in which the same words constitute both the arbitration and delegation agreements—FRC's claim is for the Court to adjudicate.

2. Burford's assertion that this Court should compel arbitration because of FRC's

alleged failure to challenge the delegation language in Section 27(a) both misreads FRC's pleadings and is contrary to Third Circuit precedent. It is black-letter law that where a contractual defense applies to an arbitration agreement with a non-severable delegation clause, or applies equally to an arbitration agreement and a nested delegation clause, the Court cannot compel arbitration. *See, e.g., Corchado v. Foulke Mgmt. Corp.*, 707 F. App'x 761 (3d Cir. 2017).

3. Under Section 3 of the FAA, the fact that this dispute does not involve "an issue referable to arbitration under an agreement in writing" defeats BGF's request for a stay. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009).

## STATEMENT OF FACTS

The Court is familiar with the facts underlying this dispute. In relevant part, FRC is a German claims aggregator that has asserted price-fixing claims on behalf of truck owners in ongoing German litigation (the "Trucks Litigation"). Compl. ¶ 2. On April 25, 2017, FRC entered into the CPA with Burford. *Id.* ¶ 22.[2] The first sentence of Section 27(a) of the CPA required the arbitration of all disputes arising under the contract, including threshold arbitrability disputes. *Id.* ¶ 23. The CPA also required FRC to engage Hausfeld as counsel in the Trucks Litigation. *Id.* ¶¶

---

[2] The Motion contains several false assertions outside the Complaint and without citation that must be disregarded for both reasons.

20, 22, 25.  FRC did so through the Hausfeld Contract on June 12, 2017.  *Id.* ¶ 25; *see* Supplemental Declaration of Sven Bode (the "Supplemental Declaration" or "Supp. Bode Decl."), Ex. B (the "Hausfeld Contract").  The Hausfeld Contract expressly provided that German court would be the exclusive forum for resolution of any disputes between FRC and Hausfeld.  *Id.* at 12 (Jurisdiction Agreement).

At the time it negotiated and ultimately executed the CPA, Burford fraudulently concealed from FRC that Hausfeld had an improper economic interest in the Trucks Litigation beyond its legal fees and that Burford and Hausfeld had conspired to orchestrate a means for Hausfeld's partners and affiliates to attempt to evade FRC's right to litigate any disputes with them.  Compl. ¶¶ 4, 24; Supp. Bode Decl. ¶ 5.  But for Burford's fraudulent concealment of its kickback scheme with Hausfeld, FRC would have never accepted that an arbitrator should play any role in resolving disputes under the CPA, including with respect to questions of arbitrability.  Supp. Bode Decl. ¶ 5.

## ARGUMENT

FRC alleges in the Complaint that it was defrauded by Burford into accepting Section 27(a) of the CPA, and that it would not have agreed to that contractual provision had Burford disclosed that (a) it was owned in part by GLS, a Delaware corporation through which partners in Hausfeld arranged to receive prohibited contingent returns from the Trucks Litigation, and (b) Burford intended

and considered that provision as barring FRC from pursuing court proceedings involving Hausfeld's affiliates.  Compl. at ¶¶ 7–9, 37–40; Supp. Bode Decl., Ex. A (Declaration of Sven Bode,  "Bode Decl.") ¶¶ 4, 8–9.  Such an allegation is for this Court to resolve under binding precedent because "[a]rbitration is strictly a matter of consent," and thus "[w]here a party contests either or both [the formation of the parties' arbitration agreement or its enforceability or applicability to the dispute], the court must resolve the disagreement."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010).

FRC's allegations were narrow and targeted—it pled that a single sentence, the first sentence of Section 27(a), was fraudulently induced.  Misinterpreting the Complaint, Burford has argued that the words of this sentence (which constitute both the arbitration and the delegation provisions) can be severed from themselves such that FRC has purportedly failed to "specifically" challenge the delegation provision.  To eliminate any confusion, FRC submits herewith the Supplemental Declaration of Sven Bode, FRC's founder and Managing Director from 2014 to 2023, making clear that FRC challenges the agreement to arbitrate "any dispute"— whether a dispute over arbitrability or the merits—as being the product of fraud, including the adoption of the LCIA Rules as its mechanism.  *See* Supp. Bode Decl. ¶ 5.

## I.    The Court Must Adjudicate FRC's Fraudulent Inducement Claim

Burford concedes that this Court must decide FRC's fraudulent inducement claim if it is "directed at" the CPA's delegation agreement.  Mot. at 12.  Burford's Motion therefore depends on its assertion that the "Complaint never even mentions the delegation clause in words or substance."  Mot. at 13–14.  But the Complaint indisputably does both.  Burford claims that the CPA contains two delegation clauses consisting of the words "any dispute" in the first sentence of Section 27(a) and of the incorporation of the LCIA Rules in that same sentence.  Those words are precisely what the Complaint alleges—in multiple places—FRC was defrauded into accepting.  In particular, after defining that very language as the CPA's "Arbitration Agreement" for ease of reference, Compl. ¶ 23, FRC repeatedly alleges that FRC would not have agreed to it but for Burford's fraud.  *See, e.g.*, Compl. ¶ 31 ("Had BGF not concealed from FRC that Hausfeld's affiliate GLS (and one of its lead German lawyers, personally) was an investor in BGF and thus the CPA, FRC would never have agreed to the Arbitration Agreement."); *see also id.* ¶¶ 25, 32, 39.

Moreover, presumably recognizing that FRC's Complaint does specifically target the words "any dispute" and "LCIA Rules," Burford contends that FRC only challenges that language to the extent that it constitutes an arbitration provision, but somehow not to the extent that these same words also constitute a delegation

provision. Even if the contractual words were severable from themselves (and they are not), Burford's argument requires a strained misreading of the Complaint—FRC simply does not allege, as Burford pretends, that had it known of Burford's scheme with Hausfeld, it would not have agreed to arbitrate the merits of claims against Burford, but would still have agreed to delegate threshold questions of arbitrability to an arbitrator. Burford's contention to the contrary is a simple game of semantics resting on FRC's adoption of "Arbitration Agreement" to reference the first sentence of Section 27(a) rather than "Delegation Agreement."

Accordingly, the Motion must be denied.

## A. FRC Challenges the Delegation Agreement

All that is required for the Court to retain jurisdiction over this action is that FRC advance a facially plausible claim of fraudulent inducement containing "explicit references to the delegation clause." *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 227 (3d Cir. 2018); *see Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 777 (3d Cir. 2013) (holding that absent limited discovery, motion to compel arbitration should be adjudicated applying Fed R. Civ. P. 12(b)(6)); *see also Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (holding that to survive a motion under Rule 12(b)(6), a claim must be "facially plausible" such that it describes facts that "allow the court to draw reasonable inferences that the defendant is liable for the misconduct alleged"). The

Complaint clearly satisfies this requirement.  It alleges that Burford fraudulently induced FRC to agree to the following provision:

> "Any dispute, controversy or claim arising out of or in connection with this Agreement, including any question regarding its formation, existence, validity, interpretation, performance, breach or termination and any application for interim, preliminary, equitable or injunctive relief, shall (to the exclusion of any other forum) be referred to and finally resolved by arbitration under the Arbitration Rules of The London Court of International Arbitration (the "LCIA"), which rules are deemed to be incorporated by reference into this Section."  CPA § 27(a).

Compl. ¶ 23.  That is precisely what Burford describes as the delegation agreement.  Mot. at 9–12.  And the Complaint describes factual content, replete with explicit references to the delegation clause, supporting FRC's claim that it would not have agreed to the relevant contractual language but for Burford's fraud. *See, e.g.*, Compl. ¶¶ 1, 4, 7–10, 23–25, 31–32, 37–40;[3] *see also Guidotti*, 716 F.3d

---

[3]     To the extent the Court finds the Complaint insufficiently clear on this issue, the Third Circuit has found that a district court must consider material submitted in connection with an opposition to a motion to compel arbitration when deciding the sufficiency of a contractual challenge to an arbitration agreement.  *See MacDonald*, 883 F.3d at 227 (assessing sufficiency of a challenge to the enforceability of a delegation clause under 12(b)(6) standard based on allegations in complaint and in a "brief opposing Defendant's motion to compel arbitration").  Notably, all but one of the cases Burford cites in the Motion assess the sufficiency of a challenge to an arbitration clause based on allegations contained in the Complaint *and the briefing*.  The only exception is *Estanislao Enters. Inc. v. FedEx Ground Corp.*, 2024 WL 3315526, at *8 (W.D. Pa. July 5, 2024) (looking only to Complaint in assessing sufficiency of challenge to arbitration clause).  The approach adopted by the district court in *Estanislao* has been roundly rejected by

at 777 (under Rule 12(b)(6) standard, a motion to compel arbitration should only be granted if "there would be no reading of the complaint, no matter how friendly to [Plaintiff], that could rightly relieve her of the arbitration provision" in the contract at issue); *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 216 (3d Cir. 2019) (holding that when adjudicating a motion to compel arbitration without the benefit of discovery, a court must "accept as true the facts established by the pleadings— the complaint and incorporated documents").

Recognizing this, Burford asserts—ironically, in conclusory fashion—that "this allegation is conclusory, and thus not entitled to be credited as true." Mot. at 14–15.[4] But the Complaint's allegations that FRC was fraudulently induced into agreeing to the relevant contractual language are far from conclusory. *See, e.g., MacDonald*, 883 F.3d at 227 (finding that allegations that arbitration clause was "illusory" and that "delegation clause suffer[ed] from the same defect as the

---

decisions in the Third Circuit, other Appellate courts, and the Supreme Court. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) (looking to the plaintiff's opposition to the motion to compel arbitration to determine if the delegation provision was challenged); *MacDonald*, 883 F.3d at 226 ("To [challenge the delegation provision], the party must at least reference the provision in its opposition to a motion to compel arbitration."); *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 338 (4th Cir. 2020) (same); *Swiger v. Rosette*, 989 F.3d 501, 505–06 (6th Cir. 2021) (same).

[4]    Burford may not provide a basis for this argument for the first time on reply. *See* D. Del. R. 7.1.3(c)(2); Transcript of Oral Argument at 33:8–14 (D. Del. Dec. 10, 2024) (Nos. 24-0929, 23-1481).

arbitration provision" were sufficient to contest enforceability of both provisions); *Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286, 291 (3d Cir. 2020) ("[C]ourts have construed a party's argument that the delegation clause suffers from the same defect as the arbitration provision to be a sufficient challenge to the delegation provision itself.") (cleaned up); *Robbins v. Playhouse Lounge*, 2021 WL 2525709, at *7 (D.N.J. June 21, 2021) (holding that the burden on the non-moving party in opposing a motion to compel arbitration "is more formalistic than substantive, as the Third Circuit has held that in challenging a delegation clause, a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions" and noting that in *MacDonald*, "the Third Circuit held that a party had sufficiently challenged a delegation provision simply by stating in its briefing that challenges to the arbitration provision applied just the same to the delegation provision") (citing *MacDonald*, 883 F.3d at 227); *Andre v. Dollar Tree Stores, Inc.*, 2018 WL 3323825 at *7 (D. Del. July 6, 2018) (finding allegations that "set forth specific facts" and "detailed the specific circumstances" that "call into question" the agreement to arbitrate were not "self-serving and conclusory").

The Complaint describes, in far more detail than required, that during the parties' negotiations of the CPA, Burford concealed from FRC that it had schemed with Hausfeld to evade German law restrictions on contingent fees, and

specifically concealed that Hausfeld partners were investors in Burford with a corresponding interest in returns from the Trucks Litigation; FRC also specifically explains that, had it known these facts, it would never have agreed to the contractual language at issue, nor to any provision that risked FRC's right to judicial relief. Compl. ¶¶ 18–28, 30–32, 40. While unnecessary at this stage, these allegations are further supported by the sworn declaration of FRC's Managing Director at that time, Sven Bode. Bode Decl. ¶¶ 4, 8–9; Supp. Bode Decl. ¶ 5. Burford's fraudulent omissions inform FRC's direct and non-conclusory challenges to the CPA's agreement to arbitrate *and* to delegate.

*First*, FRC would not have accepted contractual language requiring it to arbitrate any disputes related to the CPA—including disputes as to that contract's scope, validity, and enforceability—had Burford disclosed its improper kickback scheme with Hausfeld, and that such arbitration language could encompass proceedings involving Hausfeld, its partners, or affiliates such as GLS. Compl. ¶¶ 21, 25; Bode Decl. ¶¶ 8–9; Supp. Bode Decl. ¶ 5. As Mr. Bode explains, FRC had agreed to provisions in the Hausfeld Contract calling for disputes involving Hausfeld to be resolved in German court. Bode Decl. ¶¶ 6, 9–10; Supp. Bode Decl. ¶ 5. FRC would not have agreed to any contractual provision in the CPA, including delegation through the words "any dispute" or incorporation of the LCIA Rules, had it known that these might potentially require arbitration of FRC's

-11-

claims arising out of its relationship with Hausfeld.  Bode Decl. ¶¶ 8–9; Supp.

Bode Decl. ¶ 5.  In other words, FRC would not have agreed to Section 27(a) had it

known, for example, that Burford would use it to significantly delay—and

potentially prevent—FRC from exercising its right to obtain discovery from GLS

(whose involvement in the CPA was concealed from it) by seeking to refer the

Application to arbitration.  Bode Decl. ¶ 8.  Burford made precisely these

arguments in response to FRC's 1782 Application.  *See In re Application of*

*financialright claims GmbH*, C.A. No. 23-148–CFC, D.I. 21, at 13–14 ("Although

only BGF is a signatory to the CPA, all three Movants contend that FRC's entire

application – including the request to issue subpoenas to Burford and GLS – is

subject to arbitration.  Because any dispute about that contention is delegated to an

arbitrator, the Court should compel arbitration of and stay the entire application.").

    *Second*, and more generally, the Complaint alleges (and Mr. Bode's

Supplemental Declaration reiterates) that FRC would not have agreed to submit

*any* dispute related to the CPA to arbitration had Burford disclosed that GLS was

invested in Burford.  Compl. ¶¶ 30–32; Bode Decl. ¶¶ 8–9; Supp. Bode Decl. ¶ 5.

To the contrary, FRC would have preserved its rights to have a court police

Burford's performance under the CPA, to adjudicate which disputes fell within the

contract's scope, and to determine the contract's validity and enforceability.  Supp.

Bode Decl. ¶ 5.  As the Complaint clearly alleges, were it not for Burford's fraud,

-12-

FRC would not have agreed to arbitrate in the CPA in any way, shape, or form, including to delegate to an arbitrator the ability to force FRC to arbitrate threshold validity issues, thus delaying or preventing it from accessing the judicial system. Compl. ¶¶ 31–32, 40.

Burford asserts that whether FRC "knew it was arbitrating against GLS is immaterial in this case, since GLS is not a party" to this action. Mot. at 15. But that completely misses the point. FRC expressly alleges it would not have agreed to Section 27(a) of the CPA had Burford not concealed its facilitation of Hausfeld's illicit contingency interest in the Trucks Litigation. Compl. ¶¶ 30–32, 39–40. Those allegations, which the Court must credit at this stage of the litigation, do not depend on whether GLS is a party to *this* action, nor do they entitle Burford to relief on the basis of its suggestion that FRC would have agreed to Section 27(a) in certain circumstances, or to some alternative version of it. If FRC proves it was the product of fraud, Section 27(a) is simply unenforceable.

Nor does it matter that Burford's omissions also induced FRC's agreement to Section 27(a) as a whole. Any argument to the contrary runs squarely against the law in the Third Circuit which holds that "[i]n specifically challenging a delegation clause, a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions." *MacDonald*, 883 F.3d at 226–27; *see Williams v. Medley Opportunity Fund II, LP*, 965 F.3d

229, 237–238 (3d Cir. 2020) ("Plaintiffs contested the delegation clause in their opposition to the motion to compel" by arguing that "any delegation clause [ ] is unenforceable for the same reason [as] the rest of the arbitration contract is unenforceable" which is "sufficient to contest it.").  Simply put, Burford's failure to disclose Hausfeld's illicit investment—and that Section 27(a) of the CPA could consequently encompass disputes involving Hausfeld's affiliates and partners—was integral in procuring FRC's agreement to a dispute resolution provision encompassing both threshold disputes as to arbitrability (including specifically regarding the provision's scope, validity, and enforceability) as well as to any kind of arbitration process generally.  Accordingly, the Court must dismiss the Motion and adjudicate FRC's fraudulent inducement claim.

**B. The Delegation Agreement Is Not Severable**

Even if the Court were to accept Burford's argument that FRC's challenge to the first sentence of Section 27(a) was not directed at the delegation language, Third Circuit precedent requires judicial resolution of FRC's challenge.  Indeed, not a single one of Burford's *six* briefs seeking to compel arbitration of this action or the Application has identified a single instance in which a court has ordered arbitration of a challenge directed at the contractual language constituting the arbitration agreement where that language consists of the same words as the delegation agreement.  To the contrary, the Third Circuit has rejected Burford's

-14-

position.  That is because the severability doctrine Burford invokes requires a distinct delegation agreement that survives excision of an arbitration agreement.

Burford's argument is rooted in its mischaracterization of *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010), as purportedly holding that a delegation provision is always a "completely separate" and severable agreement.  Mot. at 15. The Supreme Court did not hold that delegation language is severable "regardless of how the parties chose to embody that antecedent agreement in the contract." Mot. at 9.[5]  To the contrary, *Rent-A-Center* stands for the uncontroversial proposition that *if* a delegation clause and an arbitration agreement are reflected in *separate agreements*, *then* a contractual defense must be directed at the delegation agreement for the Court to exercise jurisdiction.[6]  That was precisely the situation in *Rent-A-Center* where, unlike here, there was a textually separate delegation

---

[5]    The language quoted by Burford is extracted from a portion of the decision in which the Supreme Court clarified that stand-alone arbitration contracts—much like other contracts—*may* also include separate delegation clauses which are severable from their container contract.  But Burford's assertion that the manner in which a delegation agreement is reflected in writing is irrelevant to the question of severability would "elevate [delegation clauses] over other forms of contract," which is precisely what *Rent-A-Center* cautioned against. *Id*. at 71.

[6]    In *Rent-A-Center*, the plaintiff opposed a motion to compel arbitration by alleging that certain contractual provisions within an arbitration agreement— namely those which governed discovery, fee-splitting arrangements, and the coverage of the agreement—were unconscionable, but made no such allegation with respect to a provision describing "Arbitration Procedures," which contained the contract's delegation clause. *Id*. at 74.  As a result, the Supreme Court compelled arbitration of the claim.

provision not challenged by the plaintiffs.

The Third Circuit agreed with this construction of *Rent-A-Center* in *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221 (3d Cir. 2012).  There, the arbitration clause was three sentences which were collectively nearly identical to the CPA here.  *Id.* at 225–26 (describing arbitration agreement as incorporating AAA Rules and referring to the arbitrator threshold disputes regarding enforceability, validity, and scope of the contract to arbitration).[7]  Without attacking delegation specifically, the plaintiff simply alleged that this three-sentence arbitration agreement was unconscionable.  *The Third Circuit affirmed that the challenge must be decided by the Court.*  Endorsement of the result Burford requests here would be irreconcilable with the result affirmed by the Third Circuit in *Quilloin* on a nearly identical arbitration clause and similar pleading challenging the entirety of that clause.

---

[7]    Any contention by Burford that *Quilloin* is inapposite because the contract in that case had no delegation clause is meritless.  The arbitration clause at issue in *Quilloin* provided for arbitration of "any and all claims and disputes" and incorporated the AAA Rules, *see* 673 F.3d at 225–26.  Given that the Third Circuit quoted this precise language, which Burford contends constitutes the delegation clause here, Mot. at 10, the Third Circuit's reasoning clearly implied the word "separately" in its holding that "since [the parties] did not [separately] agree to arbitrate the issue of arbitrability" then a challenge to that clause is sufficient.  *Id.* at 230.  Otherwise, and equally fatal for Burford, the quoted clause in *Quilloin* is "not [an] agree[ment] to arbitrate the issue of arbitrability," in which case the substantively same provision here could not be either.  *Id*.  Stated simply, either the present clause and the *Quilloin* clause are both delegation clauses or neither is.  Either way, Burford loses if this Court applies *Quilloin*, as it must.

-16-

In *Corchado v. Foulke Mgmt. Corp.*, the Third Circuit applied *Quilloin*'s holding in a manner that again is irreconcilable with Burford's position here. 707 F. App'x 761 (3d Cir. 2017). There, the Third Court affirmed the rejection of a motion to compel arbitration of a challenge directed at an arbitration contract with a nested delegation clause. *See Corchado v. Foulke Mgmt. Corp.*, 2017 WL 1734804, Appellants' Br. at *18–19 (3d Cir. May 1, 2017) (describing delegation provision in contract at issue). In *Corchado*, the plaintiffs broadly alleged that they had been fraudulently induced to agree to the arbitration agreement without challenging specific delegation language within the agreement. *Corchado v. Foulke Mgmt. Corp.*, No. 1:15-cv-06600, Notice of Removal Ex. A. ¶ 134 (D.N.J. Sept. 3, 2015). Rejecting the argument that the plaintiffs were required to specifically challenge the delegation language—and even citing the pages of defendant's brief on this very issue—the Third Circuit affirmed that a challenge to the parties' delegation agreement was nevertheless sufficiently alleged and that consequently, it was for the "federal court . . . to adjudicate it." *Corchado*, 707 F. App'x at 762–63.

In sum, the straightforward law in this area mandates the denial of Burford's motion. A challenge to a container contract or container arbitration agreement will not apply to a delegation agreement only if the delegation agreement is severable *and* the challenge does not specifically target the delegation agreement, as the

Supreme Court held in *Rent-A-Center*. Conversely, a nonconclusory challenge to a container arbitration agreement is sufficient to challenge a delegation agreement that is not independent or severable, as the Third Circuit held in *Quilloin* and in *Corchado*, and no court (to our knowledge) has ever held to the contrary in the face of a fraudulent inducement claim. This comports with the well-established axiom that "where a challenge applies equally to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024); *see also Abbott Rapid Dx N. Am., LLC v. eMed, LLC*, 2022 WL 18027570 at *2 (N.D. Ill. Dec. 30, 2022) (finding that a fraudulent inducement claim targeted arbitration and delegation clauses of a contract when it was based, *inter alia*, on defendants' omission of material information regarding the scope of those provisions); *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019) (sustaining fraudulent inducement claim premised on defendants' concealment of their involvement in a lending agreement containing delegation clause).

Not a single one of Burford's cases holds otherwise. [8] Most do not even

---

[8]      Almost all of Burford's cases involve unconscionability challenges to arbitration clauses. Such challenges are different from fraudulent inducement challenges because they require a showing that the *content* of the provision at issue is substantively unconscionable, *i.e.* a showing that specific terms are so unfair that they should not be enforced. *See, e.g., Simar Holding Corp. v. GSC*, 87 A.D.3d 688, 689 (2d Dep't 2011); 8 Williston on Contracts § 18:9 (4th ed.). In contrast, a

involve challenges to arbitration clauses premised on contractual defenses. [9]  Those

that do either describe examples where a delegation clause was successfully

challenged,[10] or concern disputes involving contracts with separate and distinct

delegation and arbitration clauses, or multiple contracts each with their own

arbitration agreements. [11]

---

showing of fraud in the inducement, especially by omission, does not require an
analysis of the terms of the contract, but rather a showing that a material fact was
omitted that induced the party's agreement. *See*, *e.g.*, *Am. Baptist Churches of
Metropolitan N.Y. v. Galloway*, 271 A.D.2d 92, 100 (1st Dep't 2000); 26 Williston
on Contracts § 69:17 (4th ed.) ("[I]t is . . . well settled that fraud may be committed
by concealment or suppression of the truth as well as by active misstatement.").

[9]    *See*, *e.g., Yellow Soc. Interactive Ltd. v. Ebersole*, 697 F. Supp. 3d 219, 222
(D. Del. 2023) (Plaintiff did not raise contractual defenses); *Blackhawk Network,
Inc. v. IdX Corp.*, 2023 WL 3848337, at *3 (D. Del. June 6, 2023) (same);
*SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1043 (N.D. Cal. 2018)
(similar); *Scott v. CVS*, 2023 WL 3477827, at *2 (3d Cir. May 15, 2023) (same);
*Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 144–45 (3d Cir. 2022) (same).

[10]    *See*, *e.g., Eisenbach v. Ernst & Young U.S. LLP*, 2018 WL 5016993, at *3
(E.D. Pa. Oct. 16, 2018) (determining a party successfully challenged a delegation
clause); *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 227 (3d Cir. 2018); *Rosser v.
Crothall Healthcare, Inc.*, 2024 WL 3792222, at *5 (E.D. Pa. Aug. 13, 2024)
(same); *Huertas v. Foulke Mgmt. Corp.*, 2017 WL 6447868, at *5 (D.N.J. Dec. 18,
2017) (same); *MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit
Funds*, 974 F.3d 386, 398 (3d Cir. 2020) (same).

[11]    *See*, *e.g., Mack v. Progressive Corp.*, 2024 WL 1120377, at *2 (E.D. Pa.
Mar. 14, 2024) (discussing a separate arbitration agreement that contains a separate
"Arbitrability" provision); *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267–68
(11th Cir. 2017) (similar).

## II.    The Action Should not be Stayed

Under Section 3 of the FAA, the Court must stay a matter only after finding "it involves an issue referable to arbitration under an agreement in writing." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009).  For the reasons discussed above, the dispute is not referable to arbitration, which defeats the request for a stay.

## CONCLUSION

For the foregoing reasons, Burford's Motion should be denied.

Dated: January 3, 2025


OF COUNSEL:

CLEARY GOTTLIEB STEEN &                  POTTER ANDERSON &
HAMILTON LLP                             CORROON LLP
Jeffrey A. Rosenthal (*pro hac vice*)
Lina Bensman (*pro hac vice*)            */s/ Jacqueline A. Rogers*
Patrick C. Swiber (*pro hac vice*)       Matthew E. Fischer (#3092)
One Liberty Plaza                        Bindu A. Palapura (#5370)
New York, NY 10006                       Jacqueline A. Rogers (#5793)
(212) 225-2000                           Charles R. Hallinan (#6814)
jrosenthal@cgsh.com                      1313 N. Market Street, 6th Floor
lbensman@cgsh.com                        Wilmington, DE 19801-6108
pswiber@cgsh.com                         (302) 984-6000
                                         mfischer@potteranderson.com
*Counsel for financialright claims*      bpalapura@potteranderson.com
*GmbH*                                   jrogers@potteranderson.com
                                         challinan@potteranderson.com