IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINANCIALRIGHT CLAIMS GMBH,<br><br>Plaintiff,<br><br>v.<br><br>BURFORD GERMAN FUNDING LLC,<br><br>Defendant. | Civil Action No. 24-929-CFC |

---

Matthew E. Fischer, Jacqueline A. Rogers, and Charles R. Hallinan, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Jeffrey A. Rosenthal, Lina Bensman, and Patrick C. Swiber, CLEARY GOTTLIEB STEEN & HAMILTON LLP, New York, New York

*Counsel for Plaintiff*

Elena C. Norman, Anne Shea Gaza, and Samantha G. Wilson, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Derek T. Ho, Minsuk Han, Travis G. Edwards, and Eliana M. Pfeffer, KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C., Washington, D.C.

*Counsel for Defendant*

## MEMORANDUM OPINION

August 11, 2025
Wilmington, Delaware

_____
COLM F. CONNOLLY
CHIEF JUDGE

financialright claims GmbH (FRC) filed the operative one-count Amended Complaint (the Complaint) in this action on December 11, 2024. D.I. 29. FRC seeks by the Complaint a judicial declaration that Defendant Burford German Funding LLC (BGF) "fraudulently induced FRC to agree to [an] Arbitration Agreement and, [that] therefore, the Arbitration Agreement is invalid and unenforceable." D.I. 29 ¶ 37. Pending before me is BGF's motion to compel arbitration of the action and to stay further proceedings pending arbitration. D.I. 32.

I.

According to the Complaint, the Arbitration Agreement was set forth in section 27 of a Capital Provision Agreement (CPA) FRC and BGF executed in April 2017. D.I. 29 ¶¶ 1, 23. Under the CPA, BGF agreed to fund FRC's acquisition and prosecution in German courts of antitrust claims held by truckers against certain truck manufacturers. D.I. 29 ¶¶ 2, 16–17, 22. The CPA provided that in return for that funding BGF would receive a share of any proceeds obtained from FRC's assertion of the claims. D.I. 29 ¶¶ 2, 22. The Complaint alleges that BGF "nominated the German branch of the international law firm Hausfeld, Hausfeld Rechtsanwälte LLP ([Hausfeld]), to be FRC's counsel" in litigating the

claims, D.I. 29 ¶ 2, and that "around the same time as the parties negotiated the CPA, FRC engaged Hausfeld as its counsel," D.I. 29 ¶ 5.

FRC alleges in the Complaint that it "did not know when it agreed to the CPA that Hausfeld was also a part owner of BGF through an entity called German Litigation Solutions LLC ('GLS') [and did not know] that one of the lead German partners at Hausfeld responsible for the firm's representation of FRC had a personal stake" in any recoveries FRC obtained from litigating the truckers' antitrust claims. D.I. 29 ¶ 3. FRC alleges that Hausfeld's participation in the German cases constitutes "a de facto contingency fee arrangement" that is "illegal under German law." D.I. 29 ¶ 3.

According to paragraph 6 of the Complaint, "[a]fter FRC learned of Hausfeld's illegal contingency fee arrangement, it sued Hausfeld in a German court." D.I 29 ¶ 6. As also noted in paragraph 6, FRC subsequently brought an *ex parte* application in this Court under 28 U.S.C. § 1782 for permission to serve on BGF, GLS, and Burford Capital LLC (Burford) subpoenas for discovery for use in the German litigation. D.I. 29 ¶ 6; Case No. 23-1481, D.I. 2. I granted the *ex parte* application; authorized FRC to serve the requested subpoenas; and closed the *ex parte* matter. Case No. 23-1481, D.I. 51. Instead of waiting to see if FRC served the requested subpoenas and, if that occurred, filing a motion to quash any such subpoenas—which would have given rise to a justiciable dispute among the

2

parties—BGF, GLS, and Burford appealed my grant of the *ex parte* § 1782 application. Case No. 23-1481, D.I. 52. That appeal is pending before the Third Circuit.

The German litigation against Hausfeld and FRC's § 1782 application feature prominently in the Complaint and in FRC's briefing in opposition to the pending motion, and those proceedings appear to explain why FRC filed this lawsuit. They are, however, irrelevant to the merits of the pending motion. What is relevant and indeed central to deciding the motion is the Arbitration Agreement.

Paragraph 23 of the Complaint defines the Arbitration Agreement as consisting of these five sentences:

> Any dispute, controversy or claim arising out of or in connection with this Agreement, including any question regarding its formation, existence, validity, interpretation, performance, breach or termination and any application for interim, preliminary, equitable or injunctive relief, shall (to the exclusion of any other forum) be referred to and finally resolved by arbitration under the Arbitration Rules of The London Court of International Arbitration (the "*LCIA*"), which rules are deemed to be incorporated by reference into this Section. Any attempt by [FRC] to seek relief or remedies in any other forum shall constitute a breach of this Agreement and entitle [BGF] to damages, equitable relief and full indemnification against all costs and expenses incurred in connection therewith. [FRC] shall be obliged to post security for costs as directed by the arbitral tribunal ("*Tribunal*"). . . . The seat, or legal place, of arbitration shall be London. Proceedings shall occur at locations agreed [to] by the parties or [as] directed by the Tribunal.

3

D.I. 29 ¶ 23; *see also* D.I. 33 at 5–6. (Neither party made the CPA or any section of it part of the record in this action.) FRC alleges in the Complaint that it "understood at the time it signed the CPA that the Arbitration Agreement would require FRC to arbitrate any claims against BGF, its counterparty," but that it "did not understand that the Arbitration Agreement would require [it] to arbitrate any other claims against any other parties, and certainly not any claims against GLS or Hausfeld, whose role in connection with BGF was concealed from FRC." D.I. 29 ¶ 4. FRC states repeatedly in the Complaint that it would not have agreed to the Arbitration Agreement had it known of GLS's involvement in BGF. *See, e.g.*, D.I. 29 ¶¶ 7, 9, 31, 40.

II.

It is undisputed that the Arbitration Agreement is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, and therefore Chapter 2 of the Federal Arbitration Act (FAA). D.I. 33 at 6; *see generally* D.I. 34. Section 206 of the FAA provides that "[a] court having jurisdiction under [Chapter 2] may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206. Under section 208, Chapter 1 of the FAA also applies to the extent it is not in conflict with Chapter 2. 9 U.S.C. § 208. Section 2 of Chapter 1 of the FAA provides that "[a] written

4

provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Section 4 provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" may petition the Court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Section 3 of the FAA states that the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

### III.

"[W]hen it is clear on the face of the complaint that a validly formed and enforceable arbitration agreement exists and a party's claim is subject to that agreement, a district court must compel arbitration under a [Federal] Rule [of Civil Procedure] 12(b)(6) pleading standard 'without discovery's delay.'" *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 406 (3d Cir. 2020) (quoting *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013)). Under that pleading standard, I must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents," *Guidotti*, 716 F.3d at 772 (internal citation omitted), and I

must "accept as true the facts established by the pleadings—the complaint and incorporated documents," *Singh v. Uber Technologies Inc.*, 939 F.3d 210, 216 (3d Cir. 2019).[1]

BGF argues that I must send the parties to arbitration because FRC clearly and unmistakably agreed in what BGF interchangeably refers to as "delegation clauses" and "delegation provisions" in the first sentence of the Arbitration Agreement to arbitrate any threshold disputes over arbitrability—including any

---

[1] Although FRC does not dispute that I should apply the Rule 12(b)(6) standard, *see* D.I. 34 at 7, it argues that "[t]o the extent [I] find the Complaint insufficiently clear," I "must consider material submitted in connection with an opposition to a motion to compel arbitration," D.I. 34 at 8 n.3. FRC submitted with its briefing in opposition to the motion an unsworn declaration of Sven Bode. D.I. 35. The declaration was purportedly made "[p]ursuant to 28 U.S.C. § 1746." D.I. 35 at 1.

I did not consider the Bode declaration in deciding the pending motion for two reasons. First, I did not find the Complaint lacking in clarity in any relevant respect. Second, the declaration does not comply with § 1746. Under § 1746(1), a "matter may . . . be supported, evidenced, established, or proved by" an unsworn written declaration made "without the United States," only if the declaration was

> subscribed by [the declarant], as true under penalty of perjury, and dated, in substantially the following form:
>
> . . . "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746(1). Bode made his declaration in Hamburg, Germany, but he did not make it literally or substantially "under penalty of perjury under the laws of the United States of America." *See* D.I. 35 at 3.

6

dispute over the validity and enforceability of the Arbitration Agreement. *See* D.I. 33 at 1; D.I. 36 at 3. According to BGF:

> Th[e] delegation is contained in two mutually reinforcing provisions. First, the CPA incorporates by reference the London Court of International Arbitration ("LCIA") arbitral rules that authorize the arbitral tribunal to resolve "any objection to the . . . validity . . . of the Arbitration Agreement." Courts have repeatedly held that similar provisions constitute a binding delegation clause. Second, section 27(a) of the CPA states that the parties shall arbitrate "[a]ny dispute, controversy or claim arising out of or in connection with" the CPA, including "any question regarding its formation, existence, [and] validity."

D.I. 33 at 3 (ellipses and second set of brackets in the original). BGF argues that under *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), "[t]o avoid enforcement of the CPA's delegation provisions, FRC must challenge the validity of 'the delegation provision[s] specifically,'" and that FRC has failed to make that specific challenge here. D.I. 36 at 3 (quoting *Rent-A-Center*, 561 U.S. at 72). In BGF's view, "FRC's complaint . . . is directed exclusively to the [A]rbitration [A]greement as a whole," and not specifically to the Arbitration Agreement's delegation provisions. D.I. 36 at 4.

FRC does not dispute that the language in the Agreement's first sentence clearly and unmistakably delegates to the arbitral tribunal the power to decide whether a dispute between FRC and BGF is arbitrable. *See generally* D.I. 34; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)

7

("This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence.") (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Nor does it dispute that under *Rent-A-Center* it cannot contest in this Court the Arbitration Agreement's delegation of threshold arbitrability decisions to the arbitral tribunal unless it has specifically challenged the Agreement's delegation clause. *See generally* D.I. 34; *see also MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018) ("A party contesting the enforceability of a delegation clause must 'challenge[] the delegation provision specifically.'") (alteration in the original) (quoting *Rent-A-Center*, 561 U.S. at 70, 72). But FRC says that "[b]ecause [it] explicitly challenges the first sentence of Section 27[] of the CPA—in which the same words constitute both the arbitration and delegation agreements—[its] claim is for the Court to adjudicate." D.I. 34 at 2; *see also* D.I. 34 at 1 ("This action seeks a declaratory judgment that *a one-sentence contractual clause* requiring the arbitration of all disputes arising under a Capital Provision Agreement ('CPA') between financialright claims GmbH ('FRC') and Burford German Funding ('Burford' or 'BGF') was the product of fraud.") (emphasis added); D.I. 34 at 5 ("FRC's allegations were narrow and targeted—it pled that a single sentence, the first sentence of Section 27[], was fraudulently induced.").

8

FRC, however, did not specifically challenge in the Complaint the first sentence of the Arbitration Agreement. And more importantly, it did not specifically challenge that sentence's delegation of arbitrability determinations to the arbitral tribunal. FRC challenged the validity of *the Arbitration Agreement*, which, as noted above, FRC expressly defined as consisting of *five* sentences. *See* D.I. 29 ¶ 1 ("BGF fraudulently induced FRC into agreeing to an arbitration provision (the 'Arbitration Agreement') in a litigation funding agreement, the Capital Provision Agreement dated April 25, 2017 (the 'CPA')."); D.I. 29 ¶ 7 ("[T]here was plainly no meeting of the minds regarding the Arbitration Agreement because FRC was deceived by BGF's fraudulent concealment of GLS."); D.I. 29 ¶ 9 ("As a direct result of BGF's fraud on FRC, FRC did agree to the Arbitration Agreement that—according to BGF —subsumes disputes between FRC and GLS."); D.I. 29 ¶ 10 ("FRC seeks a declaration that: (i) BGF fraudulently induced FRC into agreeing to the Arbitration Agreement and (ii) the Arbitration Agreement is invalid and unenforceable."); D.I. 29 ¶ 31 ("Had BGF not concealed from FRC that Hausfeld's affiliate GLS (and one of its lead German lawyers, personally) was an investor in BGF and thus the CPA, FRC would never have agreed to the Arbitration Agreement."); D.I. 29 ¶ 32 ("[O]nly through its deception of FRC did BGF induce FRC to agree to the Arbitration Agreement."); D.I. 29 ¶ 36 ("Plaintiff seeks a judicial determination to resolve a present justiciable

controversy among the parties regarding the validity and enforceability of the Arbitration Clause."); D.I. 29 ¶ 37 ("Plaintiff is entitled to a judicial declaration by the Court that BGF fraudulently induced FRC to agree to the Arbitration Agreement and, therefore, the Arbitration Agreement is invalid and unenforceable."); D.I. 29 ¶ 40 ("FRC would not have agreed to the Arbitration Agreement, including, to the extent it can be read to have severable subparts, any subpart thereof, had it known of GLS's involvement in BGF."); D.I. 29 at 11 ("Plaintiff respectfully requests that the Court enter an Order and Final Judgment: . . . [d]eclaring that: (i) BGF fraudulently induced FRC into agreeing to the Arbitration Agreement; and (ii) as a result of BGF's fraud, the Arbitration Agreement is invalid and unenforceable."). In short, the Complaint makes clear that FRC has challenged the Arbitration Agreement in its totality.

FRC insists, *see* D.I. 34 at 3, 5, 14, and I agree, that there is no "delegation clause" or "delegation provision" in the Arbitration Agreement that is severable from the Agreement's first sentence.[2] But that is of no moment here precisely

---

[2] A "provision" is a "clause in a statute, contract, or other legal instrument." *Provision*, Black's Law Dictionary (12th ed. 2024). The Supreme Court in *Rent-A-Center*, like BGF here, used "delegation clause" and "delegation provision" interchangeably. *See, e.g.*, 561 U.S. at 68, 73, 76. A "clause" has a subject and a predicate. *Clause*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/clause [https://perma.cc/NV9B-J8M3]. There is only one subject in the first sentence of the Arbitration Agreement—"Any dispute, controversy or claim arising out of or in connection with this Agreement." D.I. 29 ¶ 23. Thus, contrary to what BGF says in its briefing, *see* D.I. 36 at 8–9, there is

10

because nowhere in the Complaint does FRC specifically refer to the first sentence of the Arbitration Agreement or challenge the validity of that sentence's delegation of the arbitrability of FRC's disputes with BGF to the arbitral tribunal. FRC claims to have been defrauded by BGF only to the extent the Arbitration Agreement "require[s] FRC to arbitrate any . . . claims against . . . GLS or Hausfeld, whose role in connection with BGF was concealed from FRC." D.I. 29 ¶ 4. FRC does not allege that it was fraudulently induced to agree to the first sentence of the Arbitration Agreement; nor does it allege that it was fraudulently induced to agree to delegating to the arbitral tribunal the power to decide the arbitrability of FRC's disputes with BGF. On the contrary, FRC expressly admits in the Complaint that it "understood at the time it signed the CPA that the Arbitration Agreement would require FRC to arbitrate *any claims* against BGF, its counterparty." D.I. 29 ¶ 4 (emphasis added).

---

no delegation clause or delegation provision that is nested within and severable from the Agreement's first sentence. There is no distinction between the Agreement's delegation clause and the Agreement's first sentence. *See Sentence*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/sentence [https://perma.cc/PY2J-95F9] (defining sentence as "a word, *clause*, or phrase . . . forming a syntactic unit which expresses an assertion, a question, a command, a wish, an exclamation, or the performance of an action . . .") (emphasis added).

11

"When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Schein*, 586 U.S. at 71. In this case, the Arbitration Agreement clearly and unmistakably delegates to the arbitral tribunal the power to decide disputes over arbitrability. Because FRC has not specifically challenged that delegation in its Complaint, I will compel FRC to arbitrate its dispute with BGF about the validity of the Arbitration Agreement. *MZM*, 974 F.3d at 399 ("[U]nless the party opposing arbitration challenges 'the delegation provision specifically,' the district court 'must treat it as valid' and 'must enforce it' by sending 'any challenge to the validity' of the underlying *arbitration agreement* to the arbitrator.") (emphasis in the original) (quoting *Rent-A-Center*, 561 U.S. at 72).

## IV.

FRC concedes that I "must stay" the case upon finding that "it involves an issue referable to arbitration under an agreement in writing." D.I. 34 at 20 (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009)); *see also Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) ("[Section 3 of the FAA] clearly states, without exception, that whenever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until arbitration has been concluded."). Having found that the Arbitration Agreement clearly and unmistakably delegates to the arbitral tribunal the power to decide the validity and

enforceability of the Arbitration Agreement, I will stay the case pending arbitration.

## V.

For the reasons stated above, I will grant BGF's motion to compel arbitration and to stay further proceedings pending arbitration.

The Court will issue an Order consistent with this Memorandum Opinion.