IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINANCIALRIGHT CLAIMS GMBH, | | |
| | Plaintiff, | |
| v. | | Civil Action No. 24-929-CFC |
| BURFORD GERMAN FUNDING LLC, | | |
| | Defendant. | |

---

Matthew E. Fischer, Nicole K. Pedi, and Jacqueline A. Rogers, POTTER
ANDERSON & CORROON LLP, Wilmington, Delaware; Jeffrey A. Rosenthal,
Patrick C. Swiber, and Lina Bensman, CLEARY GOTTLIEB STEEN &
HAMILTON LLP, New York, New York

*Counsel for Plaintiff*

Elena C. Norman, Anne Shea Gaza, and Samantha G. Wilson, YOUNG
CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Derek T.
Ho, Minsuk Han, Travis G. Edwards, and Eliana M. Pfeffer, KELLOGG,
HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C., Washington, D.C.

*Counsel for Defendant*

## <u>MEMORANDUM OPINION</u>

February 25, 2026
Wilmington, Delaware

COLM F. CONNOLLY
CHIEF JUDGE

In the operative one-count Amended Complaint in this action, Plaintiff financialright claims GmbH (Financialright) seeks an order and final judgment "[d]eclaring that: (i) [Defendant Burford German Funding LLC (Burford)] fraudulently induced [Financialright] into agreeing to [an] Arbitration Agreement; and (ii) as a result of [Burford]'s fraud, the Arbitration Agreement is invalid and unenforceable." D.I. 29 at 11.[1] Pending before me is Financialright's motion pursuant to District of Delaware Local Rule 7.1.5 for reargument or reconsideration of my August 11, 2025 Memorandum Opinion (D.I. 39). D.I. 41 at 1.

I explained in that Memorandum Opinion the reasons why I issued an Order (D.I. 40) granting Burford's motion to compel arbitration of this action and to stay the action pending that arbitration. *See* D.I. 39. In litigating Burford's motion to compel, Financialright did not dispute that the Arbitration Agreement at issue in this case clearly and unmistakably delegates to the arbitral tribunal the power to decide disputes over arbitrability. D.I. 39 at 7; *see generally* D.I. 34. I therefore addressed in the Memorandum Opinion whether Financialright had specifically

---

[1] Citations to docket items refer to filings in this action, Civil Action No. 24-929, unless otherwise indicated.

challenged the delegation provision in the Arbitration Agreement such that I—rather than the arbitral tribunal—should decide whether the Agreement is valid. D.I. 39 at 8; *see Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("[U]nless [the party seeking to avoid arbitration] challenge[s] the delegation provision [of an Arbitration Agreement] specifically, [the court] must treat [the delegation provision] as valid under § 2 [of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."). I found that Financialright had not specifically challenged in the Amended Complaint the Arbitration Agreement's delegation of arbitrability to the arbitrator, D.I. 39 at 12, and that therefore under *Rent-A-Center* it could not avoid the arbitration Burford sought to compel.

## I.

Before getting to the merits of the pending motion, a few words need to be said about this action's convoluted procedural history. In the words of Financialright's counsel, "[I]t's a mess in terms of how we've gotten here." 12.10.24 Hr'g Tr. (docketed as D.I. 31) 18:22–23.

The mess traces its roots to January 30, 2024. On that date, Financialright filed in a related *ex parte* action (the 1481 Action) a motion titled "Unopposed Motion for Stay to Allow Parties Time to Discuss Potential Resolution." *In re financialright claims GmbH*, No. 23-1481-CFC (D. Del. Jan. 30, 2024), D.I. 12.

Keep in mind that the 1481 Action was an *ex parte* action. There was only one party in the 1481 Action—Financialright. It had initiated the 1481 Action on December 29, 2023, when it filed an *ex parte* application (the Application) pursuant to 28 U.S.C. § 1782 for an order authorizing it to serve subpoenas on Burford, Burford Capital LLC, and German Litigation Solutions LLC (collectively, the Burford entities) for discovery it sought to use in a German court proceeding. No. 23-1481, D.I. 2. Instead of waiting until after I had issued an order granting the straightforward application and Financialright had served the requested subpoenas on the Burford entities, Financialright asked me in its "Unopposed Motion" to stand down and "stay[] [the 1481 Action] unless and until [Financialright] notifies the Court that discussions of a potential resolution of the Application have been unsuccessful." No. 23-1481, D.I. 12-1 at 1. I granted the motion and signed that day (January 30, 2024) Financialright's proposed order staying the case. No. 23-1481, D.I. 13.

Four months passed. On May 31, 2024, Financialright "notifie[d] [me] that the stay imposed by [my] January 30, 2024 Order is hereby ended, as discussions of a potential resolution of [its] application pursuant to 28 U.S.C. § 1782 have been unsuccessful." No. 23-1481, D.I. 19 at 1 (internal quotation marks omitted). Financialright further informed me that day that it "intend[ed] to supplement its Application with additional discovery requests" and that it "intend[ed] to provide

3

an advance copy of those requests to [the Burford entities] . . . and [to] meet and confer with them in the hope of obtaining either their voluntary compliance or an agreement on a briefing schedule to present to the Court." No. 23-1481, D.I. 19 at 3.

Later that day, the Burford entities filed a Motion to Compel Arbitration and to Stay Further Proceedings Pending Arbitration in the 1481 Action. No. 23-1481, D.I. 20. On June 14, 2024, Financialright filed a "Stipulation and Proposed Order" for my signature that called for Financialright to file a brief in opposition to the Burford entities' motion to compel by June 27, 2024 and for the Burford entities to file a reply brief no later than July 15, 2024. No. 23-1481, D.I. 29. The stipulation was "by and between the parties," No. 23-1481, D.I. 29, even though Financialright was the only party in the 1481 Action, as the Burford entities had not requested, and I had not granted them, leave to intervene in the action. I signed the proposed order that day. No. 23-1481, D.I. 30.

On June 27, 2024, Financialright filed an answering brief in opposition to the Burford entities' motion to compel arbitration in the 1481 Action. No. 23-1481, D.I. 36. That same day, it also filed a Complaint against Burford— the Complaint that gave rise to this action. *See* D.I. 1-1 at 2. It did not, however, file the Complaint in this Court. *See* D.I. 1-1 at 2. Instead, even though Financialright says that the Complaint's "request for declaratory relief is based on

the same facts and arguments set forth in . . .[its] opposition to the [Burford entities'] Motion to Compel Arbitration and to Stay Further Proceedings Pending Arbitration" in the 1481 Action, D.I. 9 at 2, Financialright filed the Complaint in the Superior Court of Delaware, D.I. 1-1 at 2.

On July 23, 2024, Burford filed in the Superior Court a motion to dismiss the case, or, in the alternative, to stay the case pending resolution of the 1481 Action (the Superior Court Motion). D.I. 1-1 at 79–80. As reflected in the table of contents of the brief Burford filed in support of that motion, Burford argued that the Superior Court "must dismiss [the case] for lack of subject matter jurisdiction," and, in the alternative, that the Superior Court should stay the case until I ruled in the 1481 Action. D.I. 1-1 at 88.

On August 9, 2024, Burford exercised its right to remove the case from the Superior Court to this Court. *See* D.I. 1. Neither party filed a motion in the ensuing four weeks. *See* D. Del. R. 7.1.2(a) ("Unless otherwise ordered, all requests for relief shall be presented to the Court by motion."). Then, on September 11, 2024, Financialright filed an "Opposition to Burford's Motion to Dismiss, or in the Alternative, to Stay Proceedings." D.I. 12. A week later, on September 18, 2024, Burford filed a "Reply Brief in Support of [Its] Motion to Dismiss, or in the Alternative, Stay." D.I. 14.

At this point, I was thoroughly perplexed by the procedural posture of both this case and the 1481 Action. In my mind, there was no motion pending before me in this case for Financialright to oppose or Burford to support. And I did not understand why I was being asked to resolve a dispute among four entities in an *ex parte* proceeding initiated by one of them. To try to sort things out, I convened a joint hearing for both actions on November 1, 2024.

In preparing for that hearing, I did not study the briefing the parties had submitted in connection with the Superior Court Motion in this action. We are a very busy court. It would be a waste of my time and not fair to the hundreds of parties in the hundreds of other cases I have for me to devote hours parsing arguments in briefing on a motion that on its face addressed whether a state court could exercise jurisdiction over this action. I knew from a cursory review of the briefing and from letters submitted by the parties that both parties believed this action and the 1481 Action overlapped. *See* D.I. 9 at 2; D.I. 10 at 2. And, as I had studied the briefing in the 1481 Action and believed I would benefit from oral argument in that action, I thought it would be efficient to hear from the parties in both actions to gain clarity on where things stood.

At the outset of the November 1 hearing, I explained that I had been prepared early in the year to rule on Financialright's § 1782 Application when it filed its motion to stay; and that as a result of the motion to stay, Financialright's

6

Application had moved "to the bottom of the pile" of the hundreds of motions

pending before me.  11.1.24 Hr'g Tr. (docketed as D.I. 20) 4:19–25.  I then turned

to "sort[ing] out what motions we have pending" in both actions.  11.1 Tr. 6:6–7.

When I asked the parties if there were any motions pending in this action, both

sides referred me to the Superior Court Motion.  11.1 Tr. 7:1–15.  I responded:

> I have to tell you, and I'm not saying I know the answer
> to this, but just in my experience, I don't know of a case
> where I've had, as a litigant or as a judge, a motion [to
> dismiss for lack of subject matter jurisdiction] filed in
> state court be transformed and treated as a motion filed in
> federal court in a removed case.
>
> * * * *
>
> Does anybody know, is there authority out there that if
> you file a motion [for lack of subject matter jurisdiction]
> in state court and the case is removed, that motion
> becomes pending in federal court?

11.1 Tr. 7:17–22, 8:13–16.

When neither side was able to cite such authority, I stated:

> Well, I'm not so sure how much we're going to get into,
> then, the [Superior Court] Motion to Dismiss in the
> [No. 24-]929 action, just because, to me, that's not a
> pending motion, but what I'd like is, maybe you all can,
> after we leave here today, look into does a state-court-filed
> motion [to dismiss for lack of subject matter jurisdiction]
> remain alive when you remove a case to federal court?
>
> I don't know the answer to that question, and I have
> enough to do, so I'm going to leave it to you all to figure
> that out.

> All right.  So let's do this, let's start, then, with the
> motions that are pending in the 1481 [A]ction . . . .

11.1 Tr. 11:21–12:8.  For the remainder of the hearing, I heard argument about

issues in the 1481 Action.

Two weeks later, on November 14, Financialright and Burford filed in this

action a stipulation in which they informed me that they "ha[d] conferred and

respectfully submit that the Superior Court Motion remains pending."  D.I. 21

at 2.[2]  The parties requested that Burford be allowed to "re-file" (i.e., file) the

Superior Court Motion in this action and that they be allowed to "adopt[]" the

briefing and declarations they had filed in support of and opposition to that motion.

D.I. 21 at 2–3.  The stipulation further provided that "[u]nless the Court directs

otherwise, the parties will not submit further briefing on the Superior Court Motion

or seek oral argument on the Superior Court Motion."  D.I. 21 at 3.  I signed the

stipulation the next day.  D.I. 22.

---

[2] In a footnote in the stipulation, the parties cited three district court cases and
*Moore's Federal Practice* in support of their position that the Superior Court
Motion remained pending.  *See* D.I. 21 at 2 n.1.  None of these authorities,
however, addresses a motion to dismiss for lack of subject matter jurisdiction.  *See
Williamson Cnty. Bd. of Educ. v. C.K.*, 2007 WL 3023616, at *4 (M.D. Tenn. Oct.
11, 2007) (motion to stay); *Fernandez v. Crown Equip. Corp.*, 2008 WL 2355422,
at *1 (D.N.J. June 4, 2008) (motion to dismiss for insufficient service of process);
16 *Moore's Federal Practice* § 107.141[3] (3d ed. 2024) (motion for summary
judgment); *Russell v. Chesapeake Appalachia, L.L.C.*, 2014 WL 6634892, at *5
(M.D. Pa. Nov. 21, 2014) (addressing whether state or federal law governs when
the defendant must respond to the complaint after removal).  I thus did not find the
parties' cited authority helpful or persuasive.

8

Three days later—on November 18—I issued a Memorandum Opinion and Order in the 1481 Action, denying the Burford entities' motion to compel arbitration for lack of jurisdiction and granting Financialright's § 1782 application for permission to issue subpoenas to the Burford entities. *See* No. 23-1481, D.I. 50; No. 23-1481, D.I. 51. I expressly stated in the Order that "[n]othing in th[e] Order shall be construed to prevent or otherwise foreclose the Burford entities from timely seeking to quash the [s]ubpoenas." No. 23-1481, D.I. 51 ¶ 5. I had expected that Financialright would immediately serve on the Burford entities the requested subpoenas and that either the Burford entities would move to quash those subpoenas or Financialright would move to compel compliance with the subpoenas, thereby giving rise to a justiciable controversy over which I would have jurisdiction. I was wrong.

The next day, the Burford entities filed an appeal of the November 18 Order with the Third Circuit. No. 23-1481, D.I. 52. While that appeal was pending, I turned my attention back to this action. And when I started to read the briefs the parties had "adopted," I was once again confused by the situation before me. For starters, Burford's principal argument in its briefing was that "[u]*nder settled Delaware law*, this case does not belong here." D.I. 24-1 at 1 (emphasis added). Consistent with that argument, Burford's briefing relied primarily on case law promulgated by Delaware state courts, not federal case law. *See, e.g.*, D.I. 24-1

at 8–10.  In addition, the principal relief Burford sought by its motion—dismissal of the action—seemed to be in tension with, if not barred by, an opinion issued by the Supreme Court six months earlier.  Specifically, in May 2024 in *Smith v. Spizzirri*, 601 U.S. 472 (2024), the Court had held that "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."  *Id*. at 475–76.  For these reasons, on November 22, I scheduled an oral argument on the Superior Court Motion for December 10.

At the outset of the December 10 hearing, I explained why I had asked for oral argument.  *See* 12.10 Tr. 4:3–7.  In response, Burford acknowledged that "some translation" of the state cases cited in its briefing "needs to be done," and that under *Spizzirri*, "in federal court, it is not an appropriate disposition to dismiss a case when there's a finding that it's arbitral."  12.10 Tr. 11:16–22.  Burford's counsel also asked "to clarify that what we are asking for is the relief that's appropriate in federal court under the FAA, which is to compel arbitration under Section 4, and for completeness, I will say under Section 206 of the FAA, and to stay under Section 3 of the FAA."  12.10 Tr. 13:4–9.  Burford offered to make that clarification "orally today or through another filing."  12.10 Tr. 13:2–4.

10

I responded that I was inclined to deny the Superior Court Motion without prejudice and allow Burford to bring a motion to compel arbitration with limited, expedited briefing on that motion. 12.10 Tr. 13:10–22. I asked Financialright what it thought of that proposal. *See* 12.10 Tr. 17:8. Its counsel replied that it believed its answering brief and Burford's reply brief filed in connection with the Superior Court Motion provided a sufficient basis for me to rule, but that "if the Court would be assisted by a cleaner record, through a motion that would have been initially filed here, we don't have an objection." 12.10 Tr. 18:23–19:1.

Counsel for Financialright also said that he was "prepared today to direct the Court to why" "the law is powerfully on [its] side." 12.10 Tr. 20:18–20. Counsel continued:

> [T]he one thing that I would note is this all stems from a pleading issue, where they've said we haven't pled a challenge to the delegation clause because we've pled a challenge, as you know, to the arbitration clause, which we say is all one in the same.
>
> And to the extent that that argument carries any weight with the Court, we were going to even suggest today that we would have leave to amend our complaint, to probably add three words, when we say our client would not have entered into this arbitration clause to add the words "including all terms" or something to that effect, which I think disposes of the entire argument, because the "all terms" includes the delegation terms in there. Or something to that effect.

I think that this debate, it may be an interesting academic debate, but the fact is it's easily resolved with an amended pleading . . . .

\* \* \* \*

But if we are going to start [this] process over, I would say by the end of this week, I could have an amended complaint. They could then move [to compel arbitration] on that if they think there's any basis to. I can't see how, because we'll correct the one thing that they say we didn't plead properly. And that will eliminate this issue.

\* \* \* \*

. . . [T]heir entire argument says, because we wrote the word "arbitration agreement," defined term, their entire argument is we are not challenging the delegation agreement. It's not what we intended when we wrote those words, and if an amendment that just says, you know, the after the word "arbitration agreement," you know, "including all portions thereof," "including the delegation of arbitrability," if we were to add that, which is exactly what we meant and intended when we wrote that, it resolves this case, frankly.

Because then there's no argument that we are not challenging something that we thought we were challenging all along. So it is not a step backwards. I think, actually, it is a step forward to clarify something that they are seizing on for their entire case.

I don't think there's any dispute if we were to add those words, that the motion goes away. Maybe we don't even have motion practice.

12.10 Tr. 20:21–21:12, 21:24–22:4, 29:15–30:7.

Counsel for Burford responded to this line of argument that "[Burford] would oppose that amendment as futile." 12.10 Tr. 31:3–7. I did not resolve that issue at the hearing. Instead, I denied without prejudice the Superior Court

12

Motion, 12.10 Tr. 36:15–16, granted Financialright leave to amend its complaint,

12.10 Tr. 40:2–4, and set an expedited schedule for Financialright to file an

amended complaint, Burford to file a motion to compel arbitration, and the parties

to brief that motion, *see* 12.10 Tr. 37:18–19, 38:2–13, 40:2–4. I then heard

extensive oral argument from Financialright about why amendment of its

complaint was "unnecessary for [me] to rule in its favor" and "why [amendment]

would be far from futile." *See* 12.10 Tr. 31:15–19; *see also* 12.10 Tr. 43:7–65:21.

The next day, December 11, Financialright filed the operative Amended

Complaint. D.I. 29. On December 20, Burford filed its motion to compel

arbitration. D.I. 32. The parties completed briefing on the motion on January 10,

2025. *See* D.I. 36 (Burford's reply brief). I started work on the motion, but on

February 10, 2025, the Third Circuit scheduled oral argument in the appeal of the

1481 Action for March 4. *See In re financialright claims GmbH*, No. 24-3171 (3d

Cir. Feb. 10, 2025), D.I. 50. Accordingly, I decided to hold off in ruling on

Burford's motion to compel. The Third Circuit held oral argument on March 4 as

scheduled. *See* No. 24-3171, D.I. 57.

On August 11, I granted Burford's motion to compel arbitration and stayed

the case. D.I. 40. On August 25, Financialright filed the pending motion for

reargument. D.I. 41. Meanwhile, on October 22, 2025, a panel of the Third

Circuit affirmed my decision in the 1481 Action to deny the Burford entities'

13

motion to compel for lack of subject matter jurisdiction. *See In re financialright claims GmbH*, 2025 WL 2977513, at *8 (3d Cir. Oct. 22, 2025). The Burford entities petitioned for rehearing by the panel and then for rehearing by the Court sitting in banc. No. 24-3171, D.I. 67. The Third Circuit denied those petitions, No. 24-3171, D.I. 75, and issued on January 16, 2026 its mandate to this Court, No. 23-1481, D.I. 64.

## II.

I turn now to the pending Rule 7.1.5 motion. "The standard for obtaining relief under Local Rule 7.1.5 is difficult to meet." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 800 F. Supp. 2d 613, 622 (D. Del. 2011), *aff'd*, 728 F.3d 1336 (Fed. Cir. 2013). "A motion for reconsideration or reargument pursuant to Local Rule 7.1.5 is considered the functional equivalent of a motion to alter or amend [the] judgment pursuant to Federal Rule of Civil Procedure Rule 59(e)." *Greatbatch Ltd. v. AVX Corp.*, 179 F. Supp. 3d 370, 379 (D. Del. 2016), *aff'd mem.*, 813 F. App'x 609 (Fed. Cir. 2020). Under Third Circuit law, "[a] proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct [a] clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citation omitted). Financialright says that my ruling

is premised on a clear error of law and, in the alternative, constitutes a manifest injustice. *See* D.I. 41 at 1, 8.

A.

I reached the decision to compel Financialright to arbitrate this dispute by applying the same standard that governs motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). D.I. 39 at 5. As I noted in the Memorandum Opinion, citing *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 772 (3d Cir. 2013) and *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 216 (3d Cir. 2019), "[u]nder that pleading standard, I must 'consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents,' and I must 'accept as true the facts established by the pleadings—the complaint and incorporated documents.'" D.I. 39 at 5–6 (second alteration in the original). Because I found that Financialright had not specifically challenged in the Amended Complaint the Arbitration Agreement's delegation of arbitrability to the arbitrator, D.I. 39 at 12, I granted Burford's motion to compel.

Financialright argues that this conclusion was premised on a clear error of law because the Third Circuit stated in *MacDonald v. CashCall, Inc.*, 883 F.3d 220 (3d Cir. 2018) that "[t]o [challenge the enforceability of a delegation provision], the party must at least reference the provision in its opposition to a motion to

15

compel arbitration," *see id.* at 226, and that therefore "the [proper] question is not whether [Financialright] contested the delegation clause in its [Amended] Complaint, but [rather] whether [Financialright] did so in its opposition to the motion to compel," D.I. 41 at 1; *see also* D.I. 41 at 6 (arguing that "*MacDonald* required the Court to look at [Financialright]'s Opposition, regardless of what allegations were or were not included in the [Amended] Complaint"). The argument fails for three reasons.

1.

First, Financial did not make this argument in its opposition to Burford's motion to compel and therefore, forfeited it. *See United States v. Dupree*, 617 F.3d 724, 732 (3d Cir. 2010) ("[Motions for reconsideration] are granted for compelling reasons, such as a change in the law which reveals that an earlier ruling was erroneous, not for addressing arguments that a party should have raised earlier.") (internal quotation marks and citation omitted); *see also Confer v. Custom Eng'g Co.*, 952 F.2d 41, 44 (3d Cir. 1991) (noting that the "district court exercised sound discretion" in deeming arguments waived that the litigant had brought in a motion for reconsideration, but not in its original summary judgment papers); *DLJ Mortg. Cap., Inc. v. Stevens*, ___ F.4th ___, 2026 WL 456994, at *2 (3d Cir. Feb. 18, 2026) ("Forfeiture is the failure to make the timely assertion of a right.") (internal quotation marks and citation omitted).

16

At the December 10 hearing, Financialright framed the parties' dispute about whether Financialright had specifically challenged the Arbitration Agreement's delegation of arbitrability as "stem[ming] from a pleading issue." 12.10 Tr. 20:21–22. Its counsel insisted that "we've pled a challenge, as you know, to the arbitration clause, which we say is all one in the same," 12.10 Tr. 20:23–25, and it asked for leave to amend the Complaint to "correct the one thing that [Burford] say[s] we didn't plead properly," so that it could "eliminate this issue," 12.10 Tr. 22:2–4. *See also* 12.10 Tr. 49:24–50:2 ("Burford's characterizations of [Financialright]'s pleadings are wrong, and that's why I asked for leave to amend to make it clear."). Counsel offered that Financialright would "probably add three words" to its original Complaint—"'including all terms' or something to that effect"—and he insisted that the addition of those words "disposes of [Burford's] entire argument, because the 'all terms' includes the delegation terms in [the Arbitration Agreement]." 12.10 Tr. 21:1–9. Financialright then devoted the remainder of its argument at the hearing to trying to persuade me that the original Complaint and the Amended Complaint it intended to file satisfied *Rent-A-Center*'s requirement that a party specifically challenge an arbitration agreement's delegation provision. *See* 12.10 Tr. 43:7–65:21.

Financialright's counsel did not mention *MacDonald* at the hearing; nor did he state, imply, or suggest in any way that I should consider the contents of its

opposition brief when deciding if Financialright had specifically challenged the

Arbitration Agreement's delegation of arbitrability to the arbitrator. He did,

however, point me to *Guidotti*. In his words:

> [W]hat they've done in [*Guidotti*] is[,] ***where there is an
> allegation and there's either ambiguity in the allegation
> or the Court is uncertain or there's evidence that the
> Court wants to weigh*** without accepting it as true on a
> motion to dismiss standard, ***because a motion to compel
> arbitration at this stage is, you have to accept the
> complaint as pled***.
>
> What *Guidotti* says is, no, you can defer, and you
> could say, have discovery on this issue, and then come
> back to me and the standard is a Rule 56 standard [for
> summary judgment]. It's a different standard. You don't
> have to take the complaint as pled. You could consider the
> evidence, and then you can come back and make that
> decision.
>
> And that's what *Guidotti* said, and that's what, Your
> Honor, has been -- the decisions of a number of other
> circuits that have all cited *Guidotti*, and what they have
> specifically said is you hold the motion to compel in
> abeyance.
>
>          * * * *
>
> And that's why, frankly, in this pleading itself, if
> you have doubts about that Paragraph 40 [of the Amended
> Complaint], and, you know, ***to the extent that you find
> ambiguity and what are we really alleging, you can have
> discovery, and then you can come back on a Rule 56
> [standard]***.

12.10 Tr. 45:14–46:6, 46:10–14 (emphasis added).

Counsel's summary of *Guidotti*'s holding was correct insofar as the Third

Circuit held in *Guidotti* that a district court should apply to a motion to compel

arbitration either the standard that governs a Rule 12(b)(6) motion to dismiss or the

standard that governs a Rule 56 motion for summary judgment. *See* 716 F.3d

at 776. He was also correct that *Guidotti* further held that the district court should

apply the Rule 56 standard if the complaint is ambiguous about the arbitration

agreement in question, and that in such cases the district court should allow for

limited discovery. *See* 716 F.3d at 776. But counsel erred when he said that

*Guidotti* also requires limited discovery and application of the Rule 56 standard if

"there's evidence that the Court wants to weigh." *See* 12.10 Tr. 45:14–23. In

point of fact, the court held in *Guidotti* that:

> [W]hen it is apparent, based on the face of a complaint,
> and documents relied upon in the complaint, that certain
> of a party's claims are subject to an enforceable arbitration
> clause, a motion to compel arbitration should be
> considered under a Rule 12(b)(6) standard without
> discovery's delay. But if the complaint and its supporting
> documents are unclear regarding the agreement to
> arbitrate, *or if the plaintiff has responded to a motion to
> compel arbitration with additional facts sufficient to
> place the agreement to arbitrate in issue*, then the parties
> should be entitled to discovery on the question of
> arbitrability before a court entertains further briefing on
> the question.

716 F.3d at 776 (emphasis added) (internal quotation marks, brackets, and citations

omitted). The court also made clear in *Guidotti* that for "additional facts" to be

"sufficient to place the agreement to arbitrate in issue," the party opposing

arbitration must "come forth with *reliable evidence that is more than a naked*

19

*assertion* that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." 716 F.3d at 774 (emphasis added) (internal quotation marks, citations, and ellipses omitted). Although *Guidotti* dealt with a challenge to the enforceability of an arbitration agreement, its holding applies equally to a challenge to the enforceability of a delegation provision in an arbitration agreement. *See Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 322 (3d Cir. 2024) (applying *Guidotti* to delegation provision in arbitration agreement); *see also Rent-A-Center*, 561 U.S. at 70 ("An agreement to arbitrate a gateway issue [i.e., a delegation provision] is simply an additional, antecedent agreement . . . and the FAA operates on this additional arbitration agreement just as it does on any other.").

Counsel's invocation of *Guidotti* is noteworthy in four respects. First, he acknowledged that *Guidotti* held that either the Rule 12(b)(6) standard or the Rule 56 standard applies to motions to compel arbitration. Second, he expressly stated that I was to apply the Rule 12(b)(6) standard to Burford's motion unless I found the Amended Complaint to be ambiguous. Third, he did not say or suggest that Financialright had evidence beyond the facts alleged in the Amended Complaint that would place the delegation provision in issue. And fourth, he did not say or suggest how discovery would help Financialright make a specific challenge to the delegation provision.

Financialright's brief in opposition to the motion to compel generally mirrored its arguments at the December 10 hearing, but Financialright was more explicit and emphatic in its briefing that I should apply a Rule 12(b)(6) standard to Burford's motion.  In the first sentence of the section of its opposition titled "[Financialright] Challenges the Delegation Agreement," Financialright cited *MacDonald* not for the proposition that I should look to the contents of Financialright's opposition brief, but rather for the proposition that "[a]ll that is required for the Court to retain jurisdiction over this action is that [Financialright] advance a facially plausible claim of fraudulent inducement containing 'explicit references to the delegation clause.'"  D.I. 34 at 7.  It then cited *Guidotti* for the proposition that "absent limited discovery, [a] motion to compel arbitration should be adjudicated applying Fed. R. Civ. P. 12(b)(6)," and *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) for the proposition that "to survive a motion under Rule 12(b)(6), a claim must be 'facially plausible' such that it describes facts that 'allow the court to draw reasonable inferences that the defendant is liable for the misconduct alleged.'"  D.I. 34 at 7.  It cited *Guidotti* again on the next page of its brief, this time for the proposition that "under [the] Rule 12(b)(6) standard, a motion to compel arbitration should only be granted if 'there would be no reading of the complaint, no matter how friendly to [Plaintiff], that could rightly relieve her of the arbitration provision' in the contract

21

at issue." D.I. 34 at 8–9 (second alteration in the original).  It then cited *Singh* for

the proposition that "when adjudicating a motion to compel arbitration without the

benefit of discovery, a court must 'accept as true the facts established by the

pleadings—the complaint and incorporated documents.'"  D.I. 34 at 9.  In other

words, citing Third Circuit cases—two of which (*Guidotti* and *Singh*) I then cited

in the Memorandum Opinion—Financialright expressly and repeatedly stated in its

opposition brief that I was required to apply the Rule 12(b)(6) standard that I

applied in the Memorandum Opinion.

 Consistent with that standard and with its approach at the December 10

hearing, Financialright also expressly and repeatedly urged me in its opposition

brief to look to its Amended Complaint—not its brief—to determine whether it had

specifically challenged the delegation provision.  *See, e.g.*, D.I. 34 at 7–8 ("The

[Amended] Complaint clearly satisfies th[e] [Rule 12(b)(6)] requirement.");

D.I. 34 at 8 ("[The Amended Complaint] alleges that Burford fraudulently induced

[Financialright] to agree to the [first sentence of the Arbitration Agreement]

. . . ."); D.I. 34 at 8 ("[T]he [Amended] Complaint describes factual content,

replete with explicit references to the delegation clause, supporting

[Financialright]'s claim . . . ."); D.I. 34 at 9 ("[T]he [Amended] Complaint's

allegations that [Financialright] was fraudulently induced into agreeing to the

relevant contractual language are far from conclusory."); D.I. 34 at 10–11 ("The

[Amended] Complaint describes, in far more detail than required, that during the parties' negotiations of the [Capital Provision Agreement], Burford concealed from [Financialright] that it had schemed with Hausfeld to evade German law restrictions on contingent fees . . . ."); D.I. 34 at 12–13 ("As the [Amended] Complaint clearly alleges, were it not for Burford's fraud, [Financialright] would not have agreed to arbitrate in the [Capital Provision Agreement] in any way, shape, or form, including to delegate to an arbitrator the ability to force [Financialright] to arbitrate threshold validity issues . . . ."); D.I. 34 at 6 ("Those words are precisely what the [Amended] Complaint alleges . . . .").

Financialright did not argue at the December 10 hearing or anywhere in its opposition brief that the question before me in ruling on Burford's motion to compel was whether Financialright contested the delegation provision in its opposition to the motion to compel. *See* D.I. 41 at 1. Financialright did quote in a parenthetical in the last sentence of a one-paragraph footnote in its opposition brief the statement in *MacDonald* that "[t]o [challenge the delegation provision], the party must at least reference the provision in its opposition to a motion to compel arbitration." D.I. 34 at 9 n.3 (second alteration in the original). But it did not *argue* that a court must always consider a party's opposition brief in deciding whether that party specifically challenged a delegation provision. *See generally* D.I. 34. On the contrary, and consistent with its counsel's argument about *Guidotti*

23

at the December 10 hearing, Financialright stated in the first sentence of the

footnote (with a supporting citation to *MacDonald*) that "*[t]o the extent the Court*

*finds the [Amended] Complaint insufficiently clear* on th[e] issue [of the delegation

of arbitrability], the Third Circuit has found that a district court must consider

material submitted in connection with an opposition to a motion to compel

arbitration when deciding the sufficiency of a contractual challenge to an

arbitration agreement."  D.I. 34 at 8 n.3 (emphasis added) (citing *MacDonald*, 883

F.3d at 227).  In other words, Financialright argued in the footnote that a court

must consider a party's opposition brief *only* if the complaint is "insufficiently

clear."  Accordingly, Financialright forfeited the argument that it need only have

made a reference to the Arbitration Agreement's delegation of arbitrability in its

opposition brief to have mounted the requisite specific challenge to that delegation

under *Rent-A-Center*.  *See Kalu v. Spaulding*, 113 F.4th 311, 344 n.21 (3d Cir.

2024) ("[A]rguments raised in passing (such as, in a footnote), but not squarely

argued, are considered forfeited . . . .") (brackets and citation omitted).

2.

Second, and relatedly, Financialright waived the argument because it invited

the alleged error it now complains of.  *See United States v. Henderson*, 64 F.4th

111, 116 (3d Cir. 2023) ("A [party] waives a right [to challenge an error by the

court] when that individual invites the error and plays along with a flawed theory

24

. . . throughout the litigation . . . .") (internal quotation marks and citation omitted); *cf. id.* ("[A] party may not complain on appeal of errors that he himself invited or provoked or caused the court . . . to commit.") (internal quotation marks and citation omitted); *United States v. Console*, 13 F.3d 641, 660 (3d Cir. 1993) (same). As discussed above, Financialright did not simply fail to argue that under *MacDonald* a mere reference to the Arbitration Agreement's delegation of arbitrability in the opposition to a motion to compel constitutes a specific challenge to that delegation under *Rent-A-Center*. Rather, Financial expressly, repeatedly, and, indeed, emphatically told me to apply the Rule 12(b)(6) standard (i.e., to look only at the Amended Complaint and the documents incorporated by reference in that pleading) in addressing Burford's motion unless I deemed the Amended Complaint ambiguous (which I did not).

3.

Third, it is far from clear that the statement in *MacDonald* that "[t]o [challenge the enforceability of a delegation provision], the party must at least reference the provision in its opposition to a motion to compel arbitration," *see* 883 F.3d at 226, constitutes a binding ruling by the Third Circuit that a mere reference to an arbitration agreement's delegation of arbitrability in an opposition to a motion to compel arbitration is sufficient to challenge that delegation under *Rent-A-Center*. Accordingly, even if Financialright had not forfeited or waived the

25

argument that *MacDonald* required me to look at its opposition regardless of what was alleged in the Amended Complaint, my decision not to consider the opposition in deciding that Financialright had not specifically challenged the Arbitration Agreement's delegation of arbitrability under *Rent-A-Center* cannot be fairly characterized as a clear error of law.

The parties did not cite, and I have not found, a Supreme Court or Third Circuit decision that defines "clear error of law." Judge Lamberth has observed that "[c]ourts have not generally defined what constitutes 'clear error' under Rule 59(e)." *Lardner v. F.B.I.*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012) (citation omitted). The scarce case law on the subject teaches that courts employ a "very exacting standard" when looking for clear error and do not find that a decision was based on clear error absent a "clear conviction" that the decision was wrong. *Id.* (citing *Hopwood v. Texas*, 236 F.3d 256, 272 (5th Cir. 2000)). The Seventh Circuit has held that for a final judgment to be clearly erroneous, it must be "dead wrong," not "just maybe or probably wrong." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988). What seems clear (pardon the pun) from the case law and the phrase itself is that a "clear error of law" connotes an error that is more convincing, obvious, definitive, and absolute than a mere error of law.

There was no such error here because under *Guidotti* (and as confirmed by *Young*), the Rule 12(b)(6) standard applies to motions to compel unless the

26

complaint and its supporting documents are unclear about whether the parties were bound by the arbitration agreement's delegation provision or the party opposing arbitration has "come forth with reliable evidence that is more than a naked assertion that it did not intend to be bound" by the delegation provision. *See Guidotti*, 716 F.3d at 774.  That holding is in tension with and arguably annuls the statement in *MacDonald* that "[t]o [challenge the enforceability of a delegation provision], the party must at least reference the provision in its opposition to a motion to compel arbitration," as *Guidotti* was decided before *MacDonald*. *See United States v. Rivera*, 365 F.3d 213, 213 (3d Cir. 2004) ("This Circuit has long held that if its cases conflict, the earlier is the controlling authority and the latter is ineffective as precedents."); *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 278 n.8 (3d Cir. 2001) ("[T]o the extent that [a case within the circuit] is read to be inconsistent with earlier case law, the earlier case law . . . controls."); *O. Hommel Co. v. Ferro Corp.*, 659 F.2d 340, 354 (3d Cir. 1981) ("[A] panel of this court cannot overrule a prior panel precedent.  To the extent that [the later case] is inconsistent with [the earlier case, the later case] must be deemed without effect.") (internal citation omitted).

 *MacDonald* did not mention *Guidotti*, and the parties in *MacDonald* did not cite *Guidotti* in the briefs they filed with the Third Circuit. *See MacDonald v. CashCall, Inc.*, No. 17-2161 (3d Cir. Sept. 6, 2017), D.I. 22 (Brief of

Defendants-Appellants); No. 17-2161, D.I. 30 (Brief of Plaintiff-Appellee); No. 17-2161, D.I. 32 (Reply Brief of Defendants-Appellants). *MacDonald* cited to *Rent-A-Center* as support for its statement that "[t]o [challenge the enforceability of a delegation provision], the party must at least reference the provision in its opposition to a motion to compel arbitration." *MacDonald*, 883 F.3d at 226. It relied in particular on the statement in *Rent-A-Center* that "[n]owhere in [the plaintiff's] opposition to Rent–A–Center's motion to compel arbitration did he even mention the delegation provision [in the arbitration agreement at issue]." *See* 561 U.S. at 72. But the plaintiff in *Rent-A-Center* had filed an employment discrimination case and the existence and applicability of the arbitration agreement in question was raised for the first time in Rent-A-Center's motion to compel arbitration. *See* 561 U.S. at 65 (alleging employment discrimination). The complaint in *Rent-A-Center* made no mention of the arbitration agreement that Rent-A-Center sought to enforce with its motion to compel. *See Jackson v. Rent-A-Center W., Inc.*, No. 3:07-cv-00050-LRH-RAM (D. Nev. Feb. 1, 2007), D.I. 1 (Complaint). It thus makes sense that the Supreme Court looked beyond the complaint and the documents incorporated therein to determine whether the plaintiff had specifically challenged the arbitration agreement's delegation of arbitrability. In this case, the arbitration agreement, including its delegation of arbitrability, was in the Amended Complaint.

I need not decide whether the statement from *MacDonald* relied on by Financialright is definitively precluded by *Guidotti* to assess whether my decision to look only to the Amended Complaint and the documents incorporated therein constituted clear error. That the statement is in tension with *Guidotti*'s express holding is sufficient to defeat Financialright's argument that the Memorandum Opinion was based on a clear error of law. *See also MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 392 (3d Cir. 2020) (describing the question of "[w]ho decides—a court or an arbitrator—whether an agreement exists, when the putative agreement includes an arbitration provision empowering an arbitrator to decide whether an agreement exists" as "a 'mind-bending' question that has been dubbed 'the queen of all threshold issues' in arbitration law") (quoting David Horton, *Arbitration About Arbitration*, 70 Stan. L. Rev. 363, 370, 422 (2018)).

## B.

Financialright also argues that "manifest justice requires" that I consider the declaration by Financialright's founder Sven Bode that Financialright submitted in support of its opposition brief despite the declaration's noncompliance with 28 U.S.C. § 1746. D.I. 41 at 8. As I explained in the Memorandum Opinion, however, the declaration's noncompliance with § 1746 is not the only reason I did not consider it. D.I. 39 at 6 n.1. Again, Financialright urged me to apply the

Rule 12(b)(6) standard to Burford's motion. Moreover, Financialright *itself* stated in its opposition brief that the declaration was "unnecessary at this stage." *See* D.I. 34 at 11.

In any event, it is not manifestly unjust for Financialright to be held to the requirements of § 1746. Financialright is a sophisticated party with sophisticated counsel from a global law firm. And other courts have similarly refused to rely on declarations executed outside of the United States that do not indicate that the declarant made the declaration under penalty of perjury under the laws of the United States pursuant to § 1746(1). *See, e.g., Sterling Fifth Assocs. v. Carpentile Corp.*, 2003 WL 22227960, at *5 (S.D.N.Y. Sept. 26, 2003) ("[W]hen executed outside the United States, such an unsworn statement must indicate that the statement is made under penalty of perjury *under the laws of the United States of America*.") (emphasis in the original); *Galindo v. City of Orange*, 2015 WL 13376564, at *1 (C.D. Cal. Apr. 30, 2015) ("Because of the failure to comply with section 1746, the Court does not consider the declaration.").

III.

For the reasons discussed above, I will deny Plaintiff financialright claims GmbH's Motion for Reargument and/or Reconsideration (D.I. 41).

The Court will issue an Order consistent with this Memorandum Opinion.